J-S12023-18

2018 PA Super 128

| DUANE WILLIAMS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| HENRY L. TAYLOR; HENRY L. TAYLOR, LLC; MT. VALLEY FARMS & LUMBER PRODUCTS, INC.; NAWAKWA, LLC; ELMER A. SHOCKEY, JR.; AND CONSTANCE S. ALERING, | |
| APPEAL OF:  HENRY L. TAYLOR; HENRY L. TAYLOR, LLC; MT. VALLEY FARMS & LUMBER PRODUCTS, INC.; AND NAWAKWA, LLC, | |
| | No. 1516 MDA 2017 |

Appeal from the Judgment entered on September 6, 2017,
in the Court of Common Pleas of Adams County,
Civil Division at No(s): 2013-SU-0000290.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY KUNSELMAN, J.:                      **FILED MAY 11, 2018**

Henry L. Taylor's three logging companies[1] appeal from the judgment

following a non-jury trial, in which Duane Williams sought to prohibit the

Taylor Companies from driving over a private lane on his property.  The trial

judge found that the Taylor Companies may not, as a matter of law, obtain a

---

[1] Originally, Mr. Taylor was also a defendant in this case, but the trial court dismissed him due to proceedings in the United States Bankruptcy Court for the Middle District of Pennsylvania.

prescriptive easement under Pennsylvania's Unenclosed Woodlands Act of 1850.[2]  We affirm.

Approximately 8.1 billion trees comprise Pennsylvania[3] – a/k/a "Penn's woods."  Here, we must consider the legal status of the trees growing on Mr. Williams' farm, where a private dirt driveway, Glatfelter Lane, passes through a wooded area of his property.  Mr. Williams sought to keep the Taylor Companies out of his woods; the Taylor Companies claimed a right of way over the lane.  The dispute in this matter concerns whether the Taylor Companies are entitled to an easement by prescription through the trees on Mr. Williams' property.  As discussed more fully below, the Taylor Companies may not acquire an easement by prescription if the lane crosses through "unenclosed woodlands" as defined by law.

As seen below in Mr. Williams' Exhibit #18, Glatfelter Lane runs from a paved, public road on the eastern side of the farm; past a few buildings; along the northern edge of a cornfield; and then into the trees.

---

[2] 68 P.S. § 411.  The statute uses "uninclosed."  We edit that spelling to the modern form of "unenclosed" throughout this Opinion.

[3] Penn State College of Agricultural Sciences, "Wow! Pennsylvania Is Full of Trees!" available at http://ecosystems.psu.edu/research/centers/private-forests/news/2013/wow-pennsylvania-is-full-of-trees (last visited 4/2/18).



The lane initially parallels the arrow drawn on the photograph at the northern edge of the easternmost cornfield, from the public road to the "X" in the trees. It is the line running from the "X," through the trees, over the line drawn to indicate a "Drainage Ditch," until reaching a tiny clearing above the second field at the northwest corner of Mr. Williams' farm. The lane then re-enters the woods before leaving Mr. Williams' land and proceeds up the mountain on other properties where the Taylor Companies desire to log timber.

Next to Glatfelter Lane runs a tiny stream (not visible in the photograph) that, according to Mark Webb, the forestry expert who testified at trial, renders the trees and shrubs in question a "forested grand riparian buffer . . . to protect the integrity of the stream." N.T. 6/26/17 at 98. This

conservation land use, combined with Mr. Webb's personal observations of the plant life and his preparation of several, multi-year, forest-management plans for Mr. Williams, lead him to conclude that, in his professional opinion, "most of the Glatfelter Lane passes through unenclosed woodlands." *Id.* at 94.

The Taylor Companies disagreed with that conclusion. Specifically, Mr. Taylor testified that his unique perspective as a lumberjack informed his view of the trees adjacent to and surrounding the lane. He testified, because "I am a sawmill owner and the timber buyer and a lumber grade salesman, I look at trees a little bit differently than others and as I drove up that lane, there was not a single tree that jumped out to me and said come cut me . . . None of the trees were of merchantable value . . ." *Id.* at 110. To him, a "woodland" is limited only to a wooded area that contains commercially suitable timber.

The court conducted a bench trial in this quiet title action. On appeal, our appellate role is limited to determining:

> whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Electric Heating & Cooling LLC***, 100 A.3d 660, 664–665 (Pa. Super. 2014) (citation omitted). Additionally, the trial judge, as finder of fact, is free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations. ***Voracek v. Crown Castle USA Inc.***, 907 A.2d 1105, 1108 (Pa. Super. 2006).

The Taylor Companies allege three errors on appeal. First, they assert that the trial judge "erred by applying a legally insufficient definition of 'woodland' and by disregarding relevant facts concerning the character of the land." Taylor Companies' Brief at 7. Second, they argue that the trial court needed to reach an "independent factual finding that the land was 'unenclosed.'" ***Id.*** And, third, the Taylor Companies claim that "the findings of fact of the trial judge were clearly erroneous." ***Id.***

The trial court ordered the Taylor Companies to file a statement of matters complained of on appeal. ***See*** Pa.R.A.P. 1925. They obliged. However, the Taylor Companies failed to include the second issue they raised in this appeal—*i.e.*, whether the trial court procedurally erred by not making a separate, factual finding that the property was "unenclosed" – in their 1925(b) Statement. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). We conclude that the Taylor

Companies failed to preserve their second issue for appellate review and, therefore, it is waived.

Also, the Taylor Companies provided us with no discussion or citation to any legal authority in support of their third issue raised on appeal, *i.e.* whether the trial court's findings of fact were clearly erroneous. Instead of making a legal argument, they offered only one page of conclusory statements about their views of the evidence. The Taylor Companies did not include any citations to the record in that portion of their brief. As Mr. Williams correctly noted, the Taylor Companies made "general complaints without setting forth a cogent discussion of a single factual finding that they claim was 'clearly erroneous.'" Williams' Brief at 35. We cannot guess which factual findings the Taylor Companies believed were "clearly erroneous." As such, we conclude that their third issue is also waived.

Next, we turn to the merits of the Taylor Companies' only remaining appellate issue, namely, whether the trial court applied a legally insufficient definition of "woodland" and disregarded relevant facts concerning the character of the land.

Generally, under the common law, one may acquire a prescriptive easement through someone else's property by proving "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of the easement] for a period of 21 years." ***PA Energy Vision, LLC v. South Avis Realty, Inc.***, 120 A.3d 1008, 1014 (Pa. Super. 2015) (citation omitted). However, in 1850, the General Assembly carved out an exception to that general rule

by forbidding the acquisition of prescriptive easements through unenclosed woodlands. The Unenclosed Woodlands Act dictates:

> No right of way shall be hereafter acquired by user, where such way passes through un[e]nclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

Prior to the Act, a prescriptive easement could arise regardless of the physical nature of the property. It did not matter whether the land was enclosed or trees were present. The Act was passed in response to a decision by the Supreme Court of Pennsylvania in 1837 in **Worral v. Rhoads**, 2 Whart. 427, 430 (Pa. 1837) (allowing a prescriptive easement through woods whether closed or unenclosed, cleared or uncleared), and adhered to in **Reimer v. Stuber**, 8 Harris 458 (Pa. 1853) (following **Worral,** allowing a prescriptive easement through open woodland, even though the landowner had never once visited the forested part of her property).

The legislators deemed the rule in **Worral**, allowing easements by prescription through woods, unjust. Therefore, they passed the Unenclosed Woodlands Act, which overturned **Worral** and its progeny and barred a trespasser from obtaining a prescriptive easement through unenclosed wooded areas.

Here, the parties agree that the Taylor Companies cannot obtain an easement if the wooded area in question meets the definition of "unenclosed

woodlands." They also agree that the statute bars easements by prescription, if the alleged right-of-way runs through both unenclosed woodlands and a treeless section of the same property. Taylor's Brief at 23-24; Williams' Brief at 22-23; *see Trexler v. Lutz*, 118 A.2d 210, 211 (Pa. Super. 1955). Thus, if any section of Glatfelter Lane passes through Mr. Williams' "unenclosed woodland," the parties concur that no prescriptive easement may arise. The parties disagree, however, over what constitutes "unenclosed woodlands."

We note that the legislature did not define this pivotal phrase. Also, for nearly 170 years, no appellate court has ever needed to articulate a precise meaning for this term. All previous cases addressing the issue had factual scenarios at either one extreme or the other. Beginning in 1896, for example, in *Kurtz v. Hoke*, 33 A. 549 (Pa. 1896), no one questioned that the alleged easement "extended for about 100 yards through the improved part" of the land "and then over the woodland of plaintiff." Thus, no easement was permitted. The alleged easement was also barred in *Trexler*, 118 A.2d at 210, where it extended "through a tract of 110 acres of woodland of defendants to contiguous woodland of plaintiff." Similarly, in *Martin v. Sun Pipe Line Co.*, 666 A.2d 637, 641 (Pa. 1995), the court granted summary judgment for the landowners and rejected an easement when affidavits and aerial photographs showed that "the premises were in fact heavily forested." *See also Humberston v. Humbert,* 407 A.2d 31, 32 (Pa. Super. 1979) (where for most of the 21 years, the easement went

- 8 -

through unimproved and unenclosed woods), and *Sprankle v. Burns*, 675 A.2d 1287, 1288 (Pa. Super. 1996) (where the record revealed that the dirt road crossed through unenclosed woodland, and a prescriptive easement could not be granted for timbering purposes).

At the other end of the spectrum, this Court allowed a prescriptive easement in *Eble v. Jones*, 44 A.2d 761, 762 (Pa. Super. 1945), where the facts of record clearly showed that the "premise never contained woodland;" only sparse underbrush and two or three trees, and in *Minteer v. Wolfe*, 446 A.2d 316, 321 (Pa. Super. 1982), where the growth alleged to be woodland consisted merely of "a fence row of trees and brush as is commonly found to exist on the boundary lines of land located in rural areas."

In sum, our review of the cases from nearly two centuries found only two instances where an easement was permitted because it definitely did not pass through woodlands (*Elbe* and *Minteer*), and five where an easement was barred because it definitely did pass through unenclosed woodlands (*Kurtz*, *Trexler*, *Humberston*, *Martin*, and *Sprankle*).

Thus far, only one federal district court has defined the phrase "unenclosed woodland". In *McCormick v. Camp Pocono Ridge, Inc. II*, 781 F. Supp. 328 (M.D.Pa. 1991), the court stated "It is beyond question that the words 'un[e]nclosed woodland' in this statute refer to a wooded area which is not enclosed by a fence or some other barrier." *Id*. at 333.

In the present case, we face a situation where the parties vigorously dispute whether the lane crosses through the type of "unenclosed woodlands" area the statute sought to protect. The trial judge accepted and applied the definition promulgated by Mark Webb, an expert witness who testified for Mr. Williams. Mr. Webb opined that a "woodland" is "an area of land occupied by wood and shrubs and is synonymous with 'forest.'" Trial Court Opinion, 7/5/17 at 3. The Taylor Companies contend that by adopting Mr. Webb's "ecological definition," the trial court violated the statute. Taylor Companies' Brief at 19. They argue, instead, that we should apply the following commercial definition to the term:

> factual indicators of woodland includ[e] the number and type of trees, commercial suitability of timber, presence of previous timbering, the density of foliage, canopy cover, visibly and field of view (herein referred to as "the Taylor Factors"). [Mr. Taylor] further testified that between 450 to 500 trees per acre are required to be considered a starting forest with a minimum of 18 inches diameter trees.

Taylor's Brief at 22.

All of the Taylor Companies' self-titled "Taylor Factors" are based on the testimony of their president, Mr. Henry Taylor. N.T. 6/26/17 at 104. His "factors" doubtlessly require "scientific, technical, or other specialized knowledge [that] is beyond that possessed by the average layperson." **See** Pennsylvania Rule of Evidence 702(a). However, counsel for the Taylor Companies, after an extensive *voir dire* concerning Mr. Taylor's training and experience, never offered him as an expert witness. N.T. 6/26/17 at 104-

108.  The average layperson, possessing no familiarly with the logging industry, could not possibly speak with such precision and expertise on the subject of foresting as Mr. Taylor did at trial.  Technically, Mr. Taylor was not properly qualified to offer an expert opinion and was not permitted to comment on the nature, density, size, canopy, etc. of the trees in question; nor was he permitted to testify as to the ultimate issue before the court. *See* Pennsylvania Rule of Evidence 701(c) and 704.  We note, however, that no one objected to the "expert" nature of this testimony.

Even if the trial court had recognized Mr. Taylor as an expert witness, we would not adopt his narrow definition of "woodland," as only those woods old and dense enough to be used as merchantable timber.  Like the trial court, we believe that when the legislature sought to restrict prescriptive easements through the wooded areas in the Unenclosed Woodlands Act, it intended to protect more than just those wooded areas where the trees were dense enough to harvest as lumber.  Instead, it sought to protect all wooded areas, including those used for recreational purposes like hunting or hiking, as well as those preserved in their natural state for conservation purposes. There is no indication in the record, briefs, or case law that the General Assembly intended to exclude these other uses of woods from the term "woodland" when it enacted the Unenclosed Woodlands Act.

Indeed, as noted above, the statute's sole aim was to protect landowners, like Mr. Williams, from the perceived injustice of the rule in *Worral*, *supra*.  We see no reason why the legislature, in 1850, would have

wanted to protect an owner's "liberty" to use his open woods as he sees fit, only when the woods at issue contained enough trees to make timbering profitable. If we accepted the Taylor Companies' definition, the right that the General Assembly protected would shift with market forces and/or the subjective views of whatever an individual logger deems to be harvestable.

As the trial judge here concluded, the Taylor Companies confuse "a forest suitable for commercial timbering operations with ecological unenclosed woodlands. The two are not necessarily synonymous." Trial Court Opinion, 7/5/17, at 4. We agree. The Taylor Companies' narrow definition of "woodland" misses the forest for the trees.

Mr. Webb's broader definition does not. A "woodland," he said, is an "[a]rea of land that would be occupied by herbaceous species both woody and shrub as well as grassy." N.T. 6/26/17 at 93. He also opined, and we agree, that the term woodland and forest are "synonymous." *Id.* The everyday usage of the two words bears this out. The Oxford English Dictionary defines the terms as follows: "**Woodland** – Land covered with trees."[4] "**Forest** – A large area covered chiefly with trees and

_____

[4] THE OXFORD ENGLISH DICTIONARY ONLINE, available at https://en.oxforddictionaries.com/definition/woodland (last visited 4/3/17).

undergrowth."[5]   In both definitions, the operative words are "covered," "with," and "trees."  Hence, the terms are synonymous.

Mr. Webb further testified that "most of the Glatfelter Lane passes through unenclosed woodlands."  N.T. 6/26/17 at 94.  He based this upon his finding that the land is a "forested grand riparian buffer . . . to protect the integrity of the stream."  *Id.*, at 98.  Because the trial court accepted Mr. Webb as an expert witness, he was uniquely qualified to offer his opinion on the ultimate issue at bar.  *See* Pennsylvania Rule of Evidence 704.  As a forestry expert, Mr. Webb observed that, once Glatfelter Lane passes the first field, it "is totally enclosed within the woodlands.  There are woodlands on both sides of the roadway as you go up or down the hill."  *Id.* at 96.

The trial judge credited this testimony, found it highly probative, and ultimately concluded that "it is also obvious that the area of woodland through which the right of way is located is a natural extension of the much more vast forest from which [the Taylor Companies] conduct their timbering operations.  It is contiguous and uninterrupted."  Trial Court Opinion, 7/5/17, at 4.  In light of the aerial photographs of record and the copious ones taken at ground level, we concur with the trial court.  This is especially true in the northwestern corner of Mr. Williams' farm, where Glatfelter Lane

---

[5] THE OXFORD ENGLISH DICTIONARY ONLINE, available at
https://en.oxforddictionaries.com/definition/forest (last visited 4/3/17).

enters the larger forest, before exiting from his land. The record reflects that trees and bushy undergrowth cover that portion of his property.

We therefore conclude that substantial evidence supports the trial court's findings of fact and that its conclusions of law were correct. Thus, we hereby adopt the trial judge's ecological definition of "woodland," because it effectuates the legislative intent behind the Unenclosed Woodlands Act of 1850. A "woodland" is an area of land that trees and bushy undergrowth cover, synonymous with a "forest."

The trial court appropriately found the Taylor Companies could acquire no prescriptive easement over Glatfelter Lane and quieted title in Mr. Williams.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2018