J-S08032-20

2020 PA Super 150

| | | |
|---|---|---|
| BARRY O. KUHSTOSS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD R. STEELE, SARA JANE | : | |
| STEELE, AND JAMES K. STEELE T/A | : | |
| STEELE'S LUMBER COMPANY AND | : | |
| RICHARD STEELE A/K/A RICK | : | No. 1092 WDA 2019 |
| STEELE | : | |

Appeal from the Order Entered June 27, 2019
in the Court of Common Pleas of Bedford County
Civil Division at No(s): 120 for 2013

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.: **FILED JUNE 25, 2020**

Barry O. Kuhstoss ("Kuhstoss") appeals from the Order granting the Motion for Injunctive Order filed by Donald R. Steele, Sara Jane Steele, and James K. Steele, T/A Steele's Lumber Company, and Richard Steele, a/k/a Rick Steele (collectively, "the Steeles"), regarding a prescriptive easement over Kuhstoss's property. We reverse and remand for further proceedings.[1]

This case involves a years-long dispute over the use of a private dirt right-of-way (the "Hunting Road") that runs through real property owned by the parties, who own adjacent parcels in rural Bedford County.

---

[1] We note that we exercise jurisdiction over this case pursuant to Pa.R.A.P. 311(a)(4), which provides that a direct appeal may be taken by a party aggrieved by the entry of an order granting an injunction.

Kuhstoss acquired his property (the "Kuhstoss Property") from his parents in October 1987. Kuhstoss primarily uses the Kuhstoss Property for residential purposes. The Kuhstoss Property contains various residential and agricultural buildings, and includes a mixture of open fields and woodlands. The Steeles have owned their property (the "Steele Property") since 1963, which is located roughly north of the Kuhstoss Property. The Steeles currently use the Steele Property exclusively for hunting and recreational use. The Steele Property is primarily woodlands, and contains no buildings or other improvements.

The Hunting Road is accessed from Sherman's Valley Road in Broad Top Township, Bedford County, and traverses several thousand feet north, through woodlands on the Kuhstoss Property, before reaching the Steele Property. Though the deed history for the Kuhstoss Property does not contain express written permission for the Steeles to use the Hunting Road, the Steeles have used the Hunting Road as their primary means to access the Steele Property for more than fifty years.[2] The Steeles typically use the Hunting Road several times throughout the year to hunt on the Steele Property, and primarily drive on the Hunting Road using their personal

_____

[2] An alternative right-of-way exists to access the Steele Property. The alternative right-of-way, which is expressly provided for in the Steele Property deed history, is accessed from Sherman's Valley Road, and crosses a stream before accessing the Steele Property. Although a bridge existed over the stream at one point, it washed out several decades ago. The Steeles testified that acquiring a permit for and constructing a new bridge over the stream would be difficult, if not impossible. N.T., 6/26/19, at 13-15, 24.

vehicles. On occasion, the Steeles have performed maintenance and repairs to the Hunting Road.

In 1992, Kuhstoss erected and placed a cable across the Hunting Road to block outside vehicular access. The cable was not locked, and the Steeles were able to remove the cable from the Hunting Road to access the Steele Property with their vehicles. In July 2012, Kuhstoss installed a gate, locked with a chain, blocking vehicular access to the Hunting Road. However, the Steeles would cut the chain and open the gate in order to use their vehicles to access the Steele Property. In the years that followed, the Steeles sought to reach an amicable solution with Kuhstoss, so that the Steeles could access the Steele Property with their vehicles via the Hunting Road. However, the parties could not come to an agreement.

On December 1, 2014, Kuhstoss filed a Complaint to Quiet Title. In the Complaint, Kuhstoss argued that the Steeles did not possess a right-of-way over the Hunting Road because the Steeles were not expressly granted a right-of-way for the Hunting Road; an alternative right-of-way existed for the Steeles to access the Steele Property; and the Pennsylvania Unenclosed Woodlands Act[3] precluded the Steeles from acquiring a prescriptive easement. Complaint, 12/1/14, at ¶¶ 38-57. The Steeles filed an Answer, arguing that

_____

[3] Act of April 25, 1850, P.L. 569, § 21, **repealed**, Act of December 10, 1974, P.L. 867, No. 293, § 19, **reenacted and amended**, Act of July 1, 1981, P.L. 198, No. 61. We note that the statute uses the term "uninclosed." Throughout this Opinion, we edit that spelling to use the modern form, "unenclosed."

- 3 -

they were entitled to a prescriptive easement based on their long history of using the Hunting Road with Kuhstoss's knowledge, and the unavailability of the alternative right-of-way due to the bridge washing out several decades ago, where the construction of a new bridge would be impracticable. Answer and New Matter, 6/23/15, at ¶¶ 31, 46-57. The Steeles also filed an Ejectment Counterclaim, seeking to formally recognize a prescriptive easement based on the lack of a viable alternative right-of-way; their continuous, visible, open, and notorious usage of the Hunting Road for more than 21 years; and their occasional improvement of the Hunting Road. Ejectment Counterclaim, 6/23/15, at ¶¶ 3-5. Kuhstoss filed an Answer with New Matter. The Steeles filed an Answer to the New Matter, and, on May 28, 2019, the Steeles filed a Motion for Injunctive Order for Special Relief Pending Litigation.[4] The Motion sought to remove the felled trees, and permit the Steeles to access the Hunting Road until the underlying issues were resolved.

The trial court conducted a hearing on the Motion for Injunctive Order on June 26, 2019. At the hearing, Richard and James Steele testified as to the character of the two properties, the history of the relationship between the two families, and their account of the dispute over the Hunting Road. *See* N.T., 6/26/19, at 7-51. Kuhstoss did not testify, but presented a series of exhibits purporting to demonstrate that the Hunting Road passed through

---

[4] The Steeles' Motion followed their discovery in the spring of 2019 that several large trees had been cut down across various points of the Hunting Road, which made it impassable.

- 4 -

unenclosed woodlands. Following the hearing, the trial court entered an Order granting the Steeles' Motion for Injunctive Relief, prohibiting Kuhstoss from infringing on the Steeles' use of the Hunting Road, with limitations, and requiring the Steeles to be responsible for removing the felled trees that were blocking the Hunting Road. Trial Court Order, 6/26/19, at 1-2. Kuhstoss timely filed a Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Kuhstoss raises the following questions for our review:

1. Whether the trial court erred in granting a preliminary injunction based on a prescriptive easement, where the purported right[-]of[-]way sought by prescription passes through unenclosed woodlands, which is a bar to the acquisition of a prescriptive easement under [the Pennsylvania Unenclosed Woodlands Act,] and where an unlocked cable across a road, and a seven-year[-]old locked gate do constitute an "[e]nclosure" within the meaning of the statute[?]

2. Whether the trial court erred in using equitable principles alone when granting [the Steeles] a preliminary injunction, where the [the Steeles] failed to show that their right of relief was clear and where [they] were not likely to prevail on the merits[?]

Brief for Appellant at 4.

Our standard of review over a trial court's grant of a preliminary injunction is well settled.

[I]n general, appellate inquiry is limited to a determination of whether an examination of the record reveals that any apparently reasonable grounds support the trial court's disposition of the preliminary injunction request. In ruling on a preliminary injunction request, a trial court has "apparently reasonable grounds" for its denial of relief where it properly finds that any one of the following "essential prerequisites" for a preliminary injunction is not satisfied. First, a party seeking a preliminary

- 5 -

injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking the injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (paragraph breaks, citations, footnote, and some quotation marks omitted).

We will address Kuhstoss's issues together, as they both challenge the trial court's determination that the Steeles are likely to succeed on the merits of their claim of a prescriptive easement. Brief for Appellant at 8. Kuhstoss argues that the Unenclosed Woodlands Act bars the Steeles from acquiring a prescriptive easement, because the Hunting Road travels through "unenclosed woodlands." *Id.* at 11-12. Kuhstoss argues that the trial court improperly determined that the gate restricting access to the Hunting Road could constitute an "enclosure" under the statute. *Id.* at 10-12. Finally, Kuhstoss argues that equitable considerations are not sufficient to grant a prescriptive easement without the moving party fulfilling all of the factors necessary for acquiring the easement. *Id.* at 13. In support of this contention, Kuhstoss

points to the trial court's statement that the Steeles' argument on the merits was "highly questionable" but, regardless, the court entered the Order granting the Steeles' request. *Id.* at 14-15.

Under common law, a party may generally acquire a prescriptive easement through the property of another party by proving adverse, open, notorious, continuous, and uninterrupted use of the easement for a period of 21 years. *Williams v. Taylor*, 188 A.3d 447, 451 (Pa. Super. 2018) (citing *PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1014 (Pa. Super. 2015)). In 1850, the General Assembly passed the Unenclosed Woodlands Act, which barred the acquisition of prescriptive easements that pass through "unenclosed woodlands." The Unenclosed Woodlands Act provides that

> [n]o right of way shall be hereafter acquired by user, where such way passes through un[e]nclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

Here, the trial judge determined that a preliminary injunction was warranted, and stated the following on the record:

> I think what we are talking about here is the prescriptive easement. Now, I haven't really dealt with the … [Unenclosed Woodlands Act,] really. So, I did go back through and look at some of the notes, a decision, some of the case law on … that statute. It looks to be highly questionable here, well highly questionable on whether or not the [Steeles] can succeed in their claim. The only reason that I think I am [] going to grant the preliminary injunction for now is that it may be arguable that the

- 7 -

road itself is enclosed due to [Richard] Steele's testimony regarding the cable that was put across the road and then the gate that was erected against the road. Now, I certainly may be wrong on any interpretation on that because under the statutes, it's an unenclosed woodland.

Now, the other thing that I think is arguable[,] I guess[,] is that the road does begin in not a woodland area. It appears to be the out buildings there of [Kuhstoss] that can be seen right there. But I agree with [Kuhstoss's counsel] that the case law is pretty clear that regardless if it travels through a field at one point, if it travels through woodland[s] [then] that statute applies. However, the preliminary injunction at this point is an equitable remedy. And I think … the [Steeles] have met all the other elements clearly for the preliminary injunction. I'm not willing[,] at this point[,] to [] deny the injunction just due to that. I think that it is arguable that the road has been enclosed. Now, it may not be a strong argument. But[,] given that I take it as genuine[,] that they cannot access the property at this point except for this road, I am going to grant the injunction.

N.T., 6/26/19, at 65-66 (some paragraphs combined).

In order for the Steeles to be barred from a prescriptive easement pursuant to the Unenclosed Woodlands Act, the easement at issue must travel through "unenclosed woodlands." 86 P.S. § 411. Our review of the record confirms that the Hunting Road primarily crosses woodlands. **See Williams**, 188 A.3d at 454 (Pa. Super. 2018) (explaining that "[a] 'woodland' is an area of land that trees and bushy undergrowth cover, synonymous with a 'forest.'"); **see also** N.T., 6/26/19, at 27 (wherein Richard Steele testified that the land at issue is "pretty typical Bedford County forest."). While the Hunting Road is accessed by a public road, and occasionally traverses in close proximity to open fields on the Kuhstoss Property, the documentation submitted to the trial court by the Steeles indicates that the majority of the

Hunting Road passes through woodlands. ***See*** Defendants' Exhibit #1 (depicting, by dotted line, the route of the Hunting Road through the Kuhstoss Property to its terminus on the Steele Property); ***see also*** N.T., 6/26/19, at 12 (wherein Defendants' Exhibit #1 was introduced into evidence at the hearing). Thus, if the Unenclosed Woodlands Act applies, it would apply to the entirety of the Hunting Road. ***Trexler v. Lutz***, 118 A.2d 210, 211 (Pa. Super. 1955) (holding that when a right-of-way passes through both fields and unenclosed woodlands, the entirety of the right-of-way falls under the Unenclosed Woodlands Act).

As a result, the primary dispute focuses on the trial court's interpretation of "unenclosed." In determining whether the gate and chain across the Hunting Road constituted an "enclosure" under the Unenclosed Woodlands Act, the trial court stated the following:

> I'm ruling based on the fact that [] the statute[,] I don't think is that well-written as to what is an enclosed – unenclosed woodland is. The case law does really specify that you're not to look at the nature of the ground. You're to look at the nature of the easement. Now[,] if you take that analysis into the wording of the statute, I think the plain language of the statute is ["]unenclosed woodland[,"] which kind of means that the enclosure would go around the property, or some way of the property.
>
> I'm looking at an easement. And the testimony here was that there was a cable put across the easement and a gate put across the easement. So, that's the way I'm saying that this could be exempted from that statute saying that this is an enclosed easement.

N.T., 6/26/19, at 76.

This Court has recently reviewed the history of cases in this Commonwealth that have addressed the nature of "unenclosed woodlands":

> Beginning in 1896, for example, in **Kurtz v. Hoke**, [33 A. 549 (Pa. 1896)], no one questioned that the alleged easement "extended for about 100 yards through the improved part" of the land "and then over the woodland of plaintiff." Thus, no easement was permitted. The alleged easement was also barred in **Trexler**, 118 A.2d at 210, where it extended "through a tract of 110 acres of woodland of defendants to contiguous woodland of plaintiff." Similarly, in **Martin v. Sun Pipe Line Co.**, [666 A.2d 637, 641 (Pa. 1995)], the court granted summary judgment for the landowners and rejected an easement when affidavits and aerial photographs showed that "the premises were in fact heavily forested." **See also Humberston v. Humbert**, [407 A.2d 31, 32 (Pa. Super. 1979) ] (where for most of the 21 years, the easement went through unimproved and unenclosed woods)[;] **Sprankle v. Burns**, [675 A.2d 1287, 1288 (Pa. Super. 1996)] (where the record revealed that the dirt road crossed through unenclosed woodland, and a prescriptive easement could not be granted for timbering purposes).
>
> At the other end of the spectrum, this Court allowed a prescriptive easement in **Eble v. Jones**, [44 A.2d 761, 762 (Pa. Super. 1945)], where the facts of record clearly showed that the "premise never contained woodland;" only sparse underbrush and two or three trees, and in **Minteer v. Wolfe**, [446 A.2d 316, 321 (Pa. Super. 1982)], where the growth alleged to be woodland consisted merely of "a fence row of trees and brush as is commonly found to exist on the boundary lines of land located in rural areas."
>
> In sum, our review of the cases from nearly two centuries found only two instances where an easement was permitted because it definitely did not pass through woodlands (**Eble** and **Minteer**), and five where an easement was barred because it definitely did pass through unenclosed woodlands (**Kurtz**, **Trexler**, **Humberston**, **Martin**, and **Sprankle**).

**Williams**, 188 A.3d at 451-52 (citation formatting amended).

- 10 -

In *Williams*, a property owner brought a quiet title action against several logging companies, seeking to prohibit them from driving over a private road on his property. *Id.* at 448. Following a non-jury trial, the trial court concluded that the logging companies were barred from acquiring a prescriptive easement, pursuant to the Unenclosed Woodlands Act, because the private road passed through unenclosed woodlands. *Id.* This Court, on appeal, concluded that the property through which the easement ran constituted an "unenclosed woodland" under the statute. *Id.* at 454. The *Williams* Court then determined that, as a result of the Unenclosed Woodlands Act's prohibition on prescriptive easements, when the easement runs through unenclosed woodlands, the logging companies were barred from obtaining a prescriptive easement. *Id.*; *see also Martin*, 666 A.2d at 641 (stating that the woodlands at issue were unenclosed because, "the premises were in fact heavily forested, that appellants intended to preserve the natural setting of the premises, and that the premises were not enclosed by a fence or any other artificial barrier.").

Here, our review of the evidence presented at the hearing confirms that the Hunting Road runs through woodlands that are considered to be "unenclosed woodlands" under the Unenclosed Woodlands Act, and the provisions of the statute barring a prescriptive easement through those woodlands apply. *See Williams*, 188 A.3d at 454. Though the trial court will have the opportunity to more fully evaluate the merits of the Steeles' underlying claim for a prescriptive easement, our case law reflects that the

- 11 -

Steeles are not more likely to succeed on their claim for a prescriptive easement, because the Hunting Road runs through unenclosed woodlands. *See Trexler*, 118 A.2d at 211 (holding that a property owner's act of blocking an easement was permissible pursuant to the Unenclosed Woodlands Act); *see also Martin*, 666 A.2d at 641 (holding that the "land itself" is determinative as to whether woodlands are "unenclosed," and that the woodlands at issue were "unenclosed," in part, because they "were not enclosed by a fence or any other artificial barrier.").

Following our review of the facts presented at the hearing, we conclude that no apparently reasonable grounds support the trial court's determination that the Steeles were "likely to prevail on the merits" of their underlying claim for a prescriptive easement. *See Summit Towne Ctr.*, 828 A.2d at 1001. Though the trial court's determination appears to be predicated on the nature of the easement, our case law makes plain that the nature of the woodlands through which the easement runs controls. *See Williams*, *supra*; *see also* N.T. 6/26/19, at 65 (wherein the trial court indicates that, under the Unenclosed Woodlands Act, the woodlands at issue constitute "unenclosed woodlands"). As a result, because the Steeles have failed to set forth all six elements necessary to secure a preliminary injunction, the trial court abused its discretion in granting their Motion for Injunctive Order. Consequently, we reverse the trial court's Order granting a preliminary injunction.

Order reversed. Jurisdiction relinquished.

Judge Olson joins the opinion.

Judge McCaffery files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2020