J-A10010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANIELLE FISHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| A.O. SMITH HARVESTORE | : | |
| PRODUCTS, INC.; A.O. SMITH | : | |
| CORPORATION; A.O. SMITH | : | |
| (HARVESTORE PRODUCTS); | : | |
| HARVESTORE SYSTEMS T/D/B/A | : | |
| HARVESTORE; COLUMBIA TEC TANK; | : | |
| CST INDUSTRIES, INC.; AND PENN | : | |
| JERSEY PRODUCTS, INC., | : | |
| | : | |
| APPEAL OF: CST INDUSTRIES, INC. | : | No. 2182 EDA 2019 |

Appeal from the Judgment Entered September 20, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
Case #: 2011-03913-0481

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    Filed: September 24, 2020

CST Industries, Inc. ("CST") appeals from judgment entered upon the non-jury verdict in favor of A.O. Smith Corporation ("A.O. Smith") on its contractual indemnification claim against CST.  CST also challenges the trial court's post-trial award of attorney fees to A.O. Smith.  We affirm.

The facts relevant to this appeal are as follows.  Harvestore Products, Inc. ("Harvestore") was a subsidiary of A.O. Smith that manufactured products including roller mills, which are machines that grind grain.  In 1996, Harvestore sold certain assets to an entity not relevant to this appeal;

_____

[*] Retired Senior Judge assigned to the Superior Court.

however, Harvestore retained, among other liabilities, those for the aforementioned roller mills. A.O. Smith dissolved Harvestore the following year, along with another subsidiary, Peabody TecTank ("Peabody"). A.O. Smith then transferred the retained assets and liabilities of Harvestore and Peabody to its Engineered Storage Products Company division ("ESPC"). The "transfer" was solely an accounting construct, as the ESPC was not a separate legal entity from A.O. Smith.

In December 2000, A.O. Smith and CST entered into an Asset Purchase Agreement ("APA") concerning certain assets and liabilities of the ESPC division. The APA contained the following provisions.

> [A.O. Smith], through its division, [ESPC] (the "Division"), is engaged in the business of designing, engineering, manufacturing, marketing and erecting liquid and dry bulk storage tanks. [CST] desires to purchase substantially all of the operating assets of the Division and to assume certain of the operating liabilities as specified herein, and [A.O. Smith] desires to sell the Division as an ongoing business and delegate such liabilities to [CST], on the terms and subject to the conditions set forth in this Agreement. The term "Division" is sometimes used herein as though it were a separate entity; when so used the term means that [A.O. Smith] is the entity referred to but only insofar as the activities, assets or liabilities relate to the Division and are accounted for as part of the Division's activities. The term "Business" means the business of the Division as conducted as of the date of this Agreement.

> In reliance upon the representations and warranties made herein and in consideration of the mutual covenants and agreements herein contained, [CST] and [A.O. Smith] hereby agree as follows:

ARTICLE I
PURCHASE AND SALE OF ASSETS

1.1 <u>Purchase and Sale</u>. Subject to the terms and conditions contained herein, at the Closing, [A.O. Smith] shall sell, convey, transfer, assign and deliver to [CST], and [CST] shall purchase and accept from [A.O. Smith], all of [A.O. Smith]'s right, title and interest in and to all of the assets used primarily or held for use primarily in the Division or the Business, and all tangible assets located at the Facilities . . . except the Excluded Assets and Nontransferred Assets . . . (collectively, the "Purchased Assets").

1.2 <u>Definitions: Purchased Assets</u>.

1.2.1 <u>Definitions</u>. For purposes of this Agreement, the following terms have the meanings set forth below:

. . . .

"Assumed Liabilities" means only the following liabilities of [A.O. Smith] relating to the Division, the Business or the Purchased Assets as of the Closing Date . . . subject to Section 1.5 [regarding excluded liabilities] and Article XI ["Indemnification"]: . . .

(C) all liabilities in the nature of product liability, including, without limitation, any liability for claims made for injury to person, damage to property or other damage arising from, caused by or arising out of any product designed, manufactured, assembled, installed, sold, leased or licensed by the Division, prior to the Closing date[.]

. . . .

1.4 <u>Assumed Liabilities</u>. Provided that the transactions herein contemplated are consummated, and subject to Section 1.5 and Article XI, [CST] will assume and pay, perform and discharge when due, and will indemnify [A.O. Smith] against, the Assumed Liabilities and no others, except as provided herein.

1.5 <u>Excluded Liabilities</u>. [CST] shall not be responsible for any liability or obligation of [A.O. Smith] that is owed to or at the behest of a third party other than the Assumed Liabilities nor for any liability or obligation if and to the extent [A.O. Smith] has an indemnification obligation with respect thereto under Article XI (the "Excluded Liabilities"). Without limitation, [CST] shall not be responsible for, and the Excluded Liabilities shall include:

. . . .

        (o)   any liabilities of [A.O. Smith] arising out of any litigation matters identified in Exhibit 2.13, other than those matters referenced in Item 2 of Exhibit 2.13.  [Exhibit 2.13 is entitled "Litigation."  Among other things, Item 2 lists litigation respecting product liability and references Exhibit 2.22.  Exhibit 2.22, "Products Liability," includes the case of ***William Smith v. A.O. Smith Harvestore Products, Inc.***, a New York products liability action involving a roller mill.]

        . . . .

ARTICLE XI
INDEMNIFICATION

        . . . .

11.2 <u>Indemnification by [CST]</u>.  Subject to [certain limitations and qualifications], [CST] shall indemnify [A.O. Smith], and its officers, directors, employees, shareholders, agents and representatives against and hold them harmless from any Damages[, including reasonable attorney fees,] incurred or sustained by [A.O. Smith] or any of its shareholders, officers or directors as a result of

        (i)   the breach of any term, provision, covenant or agreement contained in this Agreement by [CST];

        . . . .

        (iii) [CST]'s failure to pay, perform and discharge, when due, any of the Assumed Liabilities[.]

APA (Joint Trial Exhibit JX086) at 1-2, 9-10, 37-38 (some formatting modified for ease of reading).

        Approximately one decade after the APA was executed, Danielle Fisher initiated the instant lawsuit against A.O. Smith contending that she had been injured by a Harvestore roller mill.  A.O. Smith sought indemnification for Ms.

Fisher's claim from CST based upon the APA. CST declined. The trial court entered summary judgment in favor of A.O. Smith, holding that the language of the APA indicated that CST had assumed liability for personal injuries caused by Harvestore roller mills. Thereafter, CST's insurers opted to settle with Ms. Fisher, and the trial court approved the global settlement of Ms. Fisher's personal injury claims. A.O. Smith then filed a petition for attorney fees, which the trial court denied.

Multiple appeals followed. Ultimately, this Court, sitting *en banc*, ruled that the trial court erred in granting summary judgment to A.O. Smith. Vacating the grant of summary judgment, this Court did not reach the issue of whether A.O. Smith was entitled to attorney fees under the APA. This Court dismissed the related appeals as moot. ***See Fisher v. A.O. Smith Harvestore Products, Inc.***, 145 A.3d 738, 750 (Pa.Super. 2016) (*en banc*).

On remand, the trial court scheduled a trial to resolve the indemnification issues. Prior to trial, CST filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. As a result, the indemnification proceedings were subject to an automatic stay. In the bankruptcy court, CST's insurers, Illinois Union Insurance Company and its affiliates and their successors (collectively identifying themselves as "Chubb"), moved for relief from the stay. Specifically, Chubb argued that because CST's insurers had paid the company's portion of the settlement to Ms. Fisher, the indemnification claim was "essentially an action between two non-Debtors."

Chubb's Motion for Relief from the Automatic Stay, 10/24/17, at 4.[1] As the funds had already been paid and any recoupment from A.O. Smith would be realized by the insurers rather than CST, resolution of the indemnification claim would not have any impact on the bankruptcy estate. *Id*. The bankruptcy court granted Chubb's motion, lifting the stay and directing that, should CST receive the return of any funds from A.O. Smith as a result of Chubb's litigation of the indemnification claim, CST was to immediately remit any such amount to the insurers. *Id*. at Bankruptcy Court Order, 12/4/17, at ¶¶ 1-3.[2]

With the stay lifted, the indemnification claim proceeded to a bench trial. On May 7, 2019, the trial court issued findings of fact and conclusions of law and entered a verdict in favor of A.O. Smith. Both parties filed post-trial motions: CST raised multiple claims of trial court error in construing the APA and in evaluating the evidence while A.O. Smith sought the entry of judgment against CST and Chubb for the attorney fees and costs that it incurred subsequent to the approval of CST's settlement with Ms. Fisher. The trial court denied CST's motion, but granted A.O. Smith's motion providing that CST and Chubb were "jointly and severally liable to A.O. Smith for all

---

[1] Chubb's motion is in the certified record in A.O. Smith's Motion for Post-Trial Relief, 5/29/19, at Exhibit D.

[2] The order lifting the bankruptcy stay is in the certified record in A.O. Smith's Motion for Post-Trial Relief, 5/29/19, at Exhibit E.

reasonable attorneys' fees and expenses that A.O. Smith has incurred in this matter subsequent to February 8, 2013[.]"  Order (A.O. Smith's post-trial motion), 6/27/19, at 2.

CST filed a timely notice of appeal, and both CST and the trial court complied with Pa.R.A.P. 1925.  The parties presented their positions at video argument, and this appeal is ripe for our disposition.   CST presents the following questions for our consideration:

1. Did the Court of Common Pleas err by failing to apply the law of the case as directed by the Superior Court in its *en banc* opinion?

   A. Did the court again misapply Illinois law in holding CST had to prove the non-inclusion of roller mill liabilities in the APA?

   B. Did the trial court misconstrue "Division" despite this Court's direction and the evidence at trial?

2. When the trial court said that CST needed to establish that roller mill liabilities were "Excluded Liabilities," did it err not only in shifting the burden but in failing to consider the evidence that the liabilities were in fact expressly excluded?

3. Given that the trial court had already found that CST did not breach the indemnification obligation of the APA since it paid Ms. Fisher when due, and given that A.O. Smith abandoned any request for fees pre-trial and at trial, did the trial court err in awarding (A) A.O. Smith attorneys' fees not pleaded until its post-trial motion; and (B) "jointly and severally" against CST and a non-party on the never-established ground that the non-party was a "successor" to CST?

CST's brief at 3-4.

We begin with a review of the applicable legal principles.

Our standard of review in non-jury cases is limited to: a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Landis v. Wilt*, 222 A.3d 28, 34 (Pa.Super. 2019) (quotation marks omitted).

The APA provides that it is governed by Illinois law. *See* APA at 46.[3]

Under Illinois law, "[i]ndemnification agreements are . . . subject to the ordinary rules of contract interpretation." *Henry v. Waller*, 975 N.E.2d 93, 97 (Ill. App. Ct. 2012).

The primary goal of contract interpretation is to give effect to the intent of the parties. In determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document. If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. However, if the contract language is ambiguous, the meaning of the contract language must be ascertained through a consideration of extrinsic evidence.

The determination of whether a contract is ambiguous is a question of law for a court to decide. . . . If a court determines that a contract is ambiguous, extrinsic evidence may be considered by the trier of fact in determining the intent of the parties.

---

[3] The APA is in the certified record as Joint Trial Exhibit JX086.

***Richard W. McCarthy Tr. Dated September 2, 2004 v. Illinois Cas. Co.***, 946 N.E.2d 895, 903 (Ill. App. Ct. 2011) (cleaned up).  Specifically, "the court should admit parol evidence to explain ambiguities in a written document presented as a contract." ***CFC Inv., L.L.C. v. McLean***, 900 N.E.2d 716, 723 (Ill. App. Ct. 2008).  "Evidence as to [the] intent of parties to an ambiguous agreement . . . may be drawn from either contemporaneous or subsequent acts or conduct, looking to the substance and not the form of the transaction." ***Matter of Estate of Dorfman***, 486 N.E.2d 310, 314 (Ill. App. Ct. 1985).

Concomitantly, we note that "indemnity contracts are to be strictly construed, and any ambiguity in the agreement is to be construed most strongly against the indemnitee." ***Blackshare v. Banfield***, 857 N.E.2d 743, 746 (Ill. App. Ct. 2006).  "While the indemnity provision must be strictly construed, each case also depends upon the language and facts of that particular case." ***933 Van Buren Condo. Ass'n v. W. Van Buren, LLC***, 61 N.E.3d 929, 941 (Ill. App. Ct. 2016) (cleaned up).

With these principles in mind, we turn to the claims of error raised by CST.  In its first claim, CST contends that the trial court failed to apply the law of the case upon remand from this Court's *en banc* decision.  Specifically, CST represents that this Court's prior decision included rulings that (1) the APA's definition of assumed liabilities was not sufficient to cover future roller mill liabilities; (2) the APA does not support the conclusion that the identification of an existing roller mill case in Exhibit 2.22 made it an assumed liability; and

(3) the APA simply does not set forth an expression of intent for CST to assume roller mill liabilities. *See* CST's brief at 34-35 (citing *Fisher*, *supra* at 20-22). Applying to these alleged holdings the requirement of Illinois law that agreements to indemnify be clear and explicit, CST maintains that the trial court was obligated to conclude that no indemnification could be ordered in this case. *Id*. at 37-38. CST further argues that, to the extent that extrinsic evidence was admissible to establish the parties' intent, the trial court ignored some of it and overly relied upon self-serving testimony of A.O. Smith's representative in charge of negotiating the APA, Steve Rettler, whose testimony allegedly contradicted the express terms of the APA. *Id*. at 44.

We find no merit in CST's arguments. First, the law of the case doctrine provides, in relevant part, that "upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter[.]" *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282 (Pa.Super. 2016).[4] "To determine whether the law of the case doctrine applies, a court must examine the rulings at issue in the context of the procedural posture of the case." *Id*. at 282-83.

Critically, CST's arguments misconstrue this Court's holding in *Fisher*, *supra*. We did not, as CTS suggests, hold that the APA was insufficiently clear

---

[4] We agree with CST that the applicability of the law-of-the-case doctrine to the rulings of the Pennsylvania courts adjudicating this case is a question of Pennsylvania law. *See* CST's brief at 33 (invoking Pennsylvania law).

to justify finding the existence of an indemnification obligation under Illinois law. Rather, we held that the issue was not so clear and free from doubt as to permit it to be decided at summary judgment. The limited nature of our holding could not have been more plainly expressed:

> The trial court's decision rested on the APA's plain language. In vacating the trial court's order, **we conclude only that the APA's plain language does not justify entry of summary judgment in [A.O.] Smith's favor.** If, under the circumstances of this case, any extrinsic evidence is admissible and relevant, its import will depend on findings of fact. Any such findings must come from the trial court in the first instance.

*Id*. at 748 n.10 (citations omitted, emphasis added). Since this Court ruled that the trial court erred in granting A.O. Smith judgment as a matter of law because an issue of fact—the intent of the parties—precluded summary judgment, the trial court would have violated the law of the case had it **not** held a full trial for the finder of fact to resolve the issue.

That the trial court reached the same conclusion in its verdict on remand is not an indication that it discarded this Court's rulings. On the contrary, this Court acknowledged that the language of the APA does "not foreclose the possibility that CST assumed liabilities unrelated to the bulk storage tank Business," and that it "arguably supports a conclusion that CST agreed to discharge certain liabilities not within the contractual definition of Assumed Liabilities." *Fisher*, *supra* at 748 & n.11. The trial court's conclusion that the extrinsic evidence supported A.O. Smith's position as to the parties' intent

does not contradict any prior holding of this Court, and therefore does not violate the law of the case doctrine.

Nor do we discern any merit in CST's argument that the trial court ignored evidence or Illinois law. First, CST's view of Illinois law appears to be that if there is any ambiguity in an indemnification agreement, there can be no indemnification obligation. In other words, it contends that Illinois law only permits the enforcement of unambiguous indemnification contracts. However, as our recitation of Illinois law above reveals, indemnification agreements are subject to the same rules of construction as any other contract. Namely, such instruments are to be construed in light of the language used and the factual circumstances engendering their execution, with ambiguities resolved by using extrinsic evidence to determine the parties' intent. *See*, *e.g.*, *933 Van Buren Condo. Ass'n*, *supra* at 941. CST offers no authority to support the position that there can be no indemnification obligation that is not clear from the four corners of the contract.

As for the allegation that the trial court ignored evidence, from our review of the trial court's findings of fact, conclusions of law, and Pa.R.A.P. 1925(a) opinion, we see no indication that the trial court refused to consider relevant evidence. In making its determination, the trial court expressly relied upon the testimony of CST's owner and president William "Don" Wagner and his assistant Ronald Stier, as well as that of Mr. Rettler. *See* Trial Court Opinion, 11/13/19, at 8. The trial court found Mr. Rettler credible in explaining

that the purpose of using the separate terms "Division" and "Business" in the APA was to distinguish between: (1) the complete assets and liabilities of the ESPC accounted for on its books, which would include liabilities of no-longer-operating Harvestore and Peabody ("Division"); and (2) the business that ESPC was actively conducting at the time of the agreement ("Business").[5] ***See*** Findings of Fact, 5/7/19, at 4.

When negotiating the liabilities that were transferred under the APA, A.O. Smith attempted to maximize the scope of transfer, while CST sought to narrow the scope as much as possible. ***Id***. at 4-5. During this process, CST had management, attorneys, and accountants review ESPC's books, including "financial statements, balance sheets, historical litigation and pending claims, product liability loss runs, product failures, and historical warranty credits." ***Id***. at 6. Among the documents reviewed by CST were those related to warranty credits and personal injury claims flowing from Harvestore legacy products,[6] as well as those arising from Peabody legacy liabilities. ***Id***. at 7-8.

---

[5] CST argues that the distinction between Division and Business being temporal ("with Division being 'former' and Business being 'current'") does not make sense in viewing the APA as a whole, because "there are present-tense descriptions attributed to the Division throughout the APA." CST's brief at 44. CST misunderstands the definitions accepted by the trial court. The Division does not refer solely to liabilities for past conduct, but rather encompasses the current Business **plus** liabilities for former conduct.

[6] Among these were the 1994 William Smith roller mill case in New York, another roller mill claim by Colin Usry in 1996, a closed personal injury claim regarding a Harvestore belt feeder.

- 13 -

As such, CST was aware that the Division had exposure to liability from Peabody and Harvestore products, including Harverstore's Aquastore product line, belt feeders, and roller mills. *Id*. at 8.

The parties went back and forth on drafts of the definition of "Assumed Liabilities," ultimately agreeing upon one which included "all liabilities in the nature of product liability, including, without limitation," liability for claims for damages arising out of various aspects of the products and services of the Division. *Id*. at 5. CST specifically negotiated to have all Peabody liabilities, and some Harvestore liabilities such as the belt feeder liability, enumerated among the liabilities that were expressly excluded from the assumed liabilities. However, while Mr. Wagner acknowledged that CST had information about the Division's roller mill liabilities, it did not include those among the excluded product liabilities. Mr. Wagner simply "did not consider the roller mill liabilities to be a 'significant issue.'" *Id*. at 9. This is corroborated by the fact that the William Smith roller mill case was actually excluded from the list of excluded liabilities, leaving it within the realm of assumed product liabilities. *See* Trial Court Opinion, 11/13/19, at 7-8.

CST's argument concerning the trial court's treatment of the trial evidence fails to appreciate that this Court's review of the factual findings in the instant appeal is far different that the review we conducted in *Fisher*. There, this Court applied the same standard as the trial court in viewing the record in the light most favorable to CST and examined whether judgment as

a matter of law in favor of A.O. Smith was clear and free from doubt. *See Fisher*, *supra* at 741. Here, by contrast, our standard of review gives great deference to the trial court's factual determinations, and we must view the evidence in the light most favorable to A.O. Smith as the verdict winner. *See Landis*, *supra* at 34. The trial court, as fact finder, was free to accept some, all, or none of the evidence. *See Williams v. Taylor*, 188 A.3d 447, 450 (Pa.Super. 2018). This Court will not second-guess credibility determinations that are supported by the record or reweigh the evidence to CST's liking. *Id*.

The above recitation of the trial court's analysis of the evidence does not indicate that it refused to consider any of the testimony or exhibits offered at trial. Rather, the trial court concluded that the language of the APA, augmented by the extrinsic evidence of the course of negotiations and the difference between the terms Division and Business, established that the parties' intent was to include the ESPC's product liabilities for Harvestore roller mills in the liabilities assumed by CST. Therefore, because we discern no error of law and the above-detailed review confirms that the trial court's factual findings are supported by competent evidence, CST's first issue lacks merit.

CST's next issue is that the trial court improperly shifted the burden of proof at trial. *See* CST's brief at 3. CST maintains that instead of acknowledging that A.O. Smith had the burden to show that CST intended to assume liability for the roller mills, the trial court "presumed that roller mill liabilities were included unless CST could prove it expressly excluded them."

- 15 -

*Id*. at 47.  CST argues that, in so doing, the trial court acted "contrary to Illinois law, the testimony at trial, and CST's (non-existent) burden." *Id*.

CST again seeks to have this Court rule in its favor based upon snippets of trial testimony that support its position on the factual question of the parties' intent.  As we have already explained, that is not our role in reviewing a non-jury verdict.  *See Williams*, *supra* at 450.  The trial court, after considering all the evidence, concluded that the parties intended to include roller mill liabilities among the assumed liabilities.  We have no basis to disturb that finding.

Specifically, the court adjudged that, in defining "Assumed Liabilities" relating to the product liability in reference to not merely the Business but also to the Division, the parties intended to include within that definition not only those liabilities related to the ESPC's current products, but also those associated with Harvestore and Peabody legacy products.   This conclusion is in harmony with the language of the APA, which provides that "Assumed Liabilities" included "all liabilities in the nature of product liability" except those included among the "Excluded Liabilities."  APA at 2.  Therefore, the trial court did not shift the burden of proof to CST.  Rather, it merely applied the express language of the APA.  The trial court did not commit legal error, but instead enforced the contract as written after utilizing extrinsic evidence to determine the parties' intent as to the ambiguous Business/Division distinction.  No relief is due on CST's second claim.

In its third and final issue, CST challenges the trial court's award of attorney fees to A.O. Smith. CST notes that, prior to remand, the trial court ruled that A.O. Smith was not entitled to attorney fees under the terms of the APA because CST complied with its indemnification obligation by settling the claims with Ms. Fisher. CST claims that the trial court erred in reversing its prior decision on this point. Additionally, CST argues that A.O. Smith abandoned its request for fees at the trial following this Court's remand. *See* CST's brief at 4, 53-54. Moreover, CST contends that A.O. Smith waived any right to damages for CST's failure to indemnify under the APA when A.O. Smith agreed that CST could settle Ms. Fisher's claim but allowed CST to reserve the right to appeal the trial court's summary judgment order. *Id*. at 54. Finally, CST argues that Chubb was never joined as a party to this action, and there is no proof that Chubb is CST's successor, meaning that Chubb has been denied a full and fair opportunity to contest the judgment entered against it. *Id*. at 55-57.

A.O. Smith counters that CST was on notice before it settled Ms. Fisher's claim that A.O. Smith would be seeking attorney fees pursuant to the indemnification provisions of the APA, and that it would seek to recover fees that it would incur when CST appealed the summary judgment ruling. *See* A.O. Smith's brief at 56. Since this Court vacated that ruling and re-opened the question of A.O. Smith's entitlement to indemnification, A.O. Smith posits that the fee claim was not ripe to be reasserted until the trial court issued its

findings of the fact regarding CST's breach of the APA and entered a verdict in A.O. Smith's favor. *Id*. at 58-59. A.O. Smith further asserts that CST's argument concerning A.O. Smith's agreement to an appeal following the settlement is baseless, as "A.O. Smith has consistently maintained that CST's decision to pursue litigation to force A.O. Smith to pay for the settlement that CST negotiated with Ms. Fisher would result in damages in the form of attorney's fees that are recoverable by A.O. Smith pursuant to the APA." *Id*. at 60. Finally, A.O. Smith insists that Chubb was properly included as a payor of the attorney fee damages because Chubb obtained leave from the bankruptcy court to litigate CST's indemnification claim by declaring that it was "subrogated to the right of CST to pursue" return of the funds it paid to Ms. Fisher. *Id*. at 61. A.O. Smith argues that, since Chubb took all of the benefits of CST's rights when it pursued CST's claim in subrogation, Chubb also exposed itself to all liabilities CST faced through the litigation. *Id*. at 63-64.

The trial court's opinion on this issue is succinct, if not meager. It indicates merely that because it found that CST was required to indemnify A.O. Smith, CST breached the APA by not doing so initially, and "[t]he costs stemming from this breach are thus recoverable by A.O. Smith under the APA." Trial Court Opinion, 11/13/19, at 9. The court also states that the Chubb entities "are successors in interest to CST," citing as authority for this proposition its order granting A.O. Smith's post-trial motion. *Id*. The cited

order contains no explanation for Chubb's successor status or reference to evidence thereof. However, the order references A.O. Smith's motion, which does include such evidentiary support. **See** A.O. Smith's Motion for Post-Trial Relief, 5/29/19, at Exhibit D (Chubb's Motion for Relief from the Automatic Stay, 10/24/17), and Exhibit E (Bankruptcy Court Order, 12/4/17).

Upon thorough review of all the pertinent filings, we glean no basis to disturb the trial court's order. First, the APA provides that CST shall indemnify A.O. Smith for damages it incurs, including reasonable attorney fees, as a result of CST's failure to "pay, perform and discharge, when due, any of the Assumed Liabilities[.]" APA at 37-38. Such provisions are permissible under Illinois law. **See**, **e.g.**, **Downs v. Rosenthal Collins Grp., LLC**, 895 N.E.2d 1057, 1059 (Ill. App. Ct. 2008) (noting attorney fees are recoverable if specifically provided for in the indemnity contract). Further, A.O. Smith placed CST and Chubb on notice of its claim to recover future attorney-fee damages both before and after CST settled Ms. Fisher's claim and pursued litigation to get that money back from A.O. Smith. **See**, **e.g.**, Chubb's Motion for Relief from the Automatic Stay, 10/24/17, at 4.

Second, we reject CST's contention that it did not breach the APA because it paid Ms. Fisher's claim. We see no relevant distinction between (1) forcing A.O. Smith to litigate CST's duty to perform and then paying the liability after CST's efforts to avoid performing failed, and (2) paying the liability and then forcing A.O. Smith to litigate CST's right to recover the

- 19 -

payment based upon a lack of duty to perform. Either way, A.O. Smith suffered damages in the form of litigation costs and attorney fees resulting from CST's refusal to accept and perform its contractual duty.

Third, as noted above, Chubb sought leave from the court in which CST's bankruptcy was pending to purse the instant indemnification claim by representing to that court that it was "essentially an action between two non-Debtors" because the real impact of the resolution of the indemnification claim would be felt by Chubb and the other insurers who paid Ms. Fisher's settlement. Chubb's Motion for Relief from the Automatic Stay, 10/24/17, at 4. In another filing, Chubb expressly invoked its subrogation rights under Pennsylvania law to be legally substituted for CST in the instant case to recover the amount it paid to A.O. Smith on CST's behalf. **See** Response and Reservation of Rights, 11/7/17, at 4.[7] **See also id**. at 5 ("Insurers are therefore subrogated to the right of CST to pursue the indemnity claim, and, if successful, recover amounts paid to A.O. Smith under the settlement agreement." (unnecessary capitalization omitted))

"It is well-established that subrogation is derivative in nature, placing the subrogee in the precise position of the one to whose rights and disabilities he is subrogated." **Universal Underwriters Ins. Co. v. A. Richard Kacin,**

_____

[7] This filing is in the certified record in A.O. Smith's Motion to Dismiss CST's Claims, 2/26/18, at Exhibit E.

*Inc.*, 916 A.2d 686, 694 (Pa.Super. 2007) (cleaned up). [8] "[S]ubrogation is not an inflexible legal concept but an exercise of equitable powers, and a court is to enforce subrogation interests with a proper equitable discretion and with a due regard for the legal and equitable rights of others." *Prof'l Flooring Co., Inc. v. Bushar Corp.*, 152 A.3d 292, 302 (Pa.Super. 2016).

As CST's subrogee, Chubb succeeded to CST's position in this case, and thereby had both notice of A.O. Smith's allegations of breach and damages in the nature of fees, and a full and fair opportunity to be heard on both issues. Not only did Chubb step into CST's shoes, it was the driving force behind A.O. Smith's incursion of the costs and fees of the trial. As such, we conclude that naming Chubb, itself, in the fee order was within the trial court's flexible exercise of equitable discretion invoked by Chubb through its filings. *Accord Nathan A. Watson Co. v. Employers Mut. Cas. Co.*, 218 S.W.3d 797, 803 (Tex. App. 2007) ("[W]e hold that when an insurer sues in subrogation under a contract, it is entitled to all of the rights of its subrogee and likewise exposed to all of its liabilities.").

Finally, the fact that the trial court had denied A.O. Smith's initial fee request, which included the costs of defending Fisher's claims, did not prevent A.O. Smith from later pursuing the damages it sustained as a result of CST's

---

[8] As the question whether Chubb could pursue CST's claims in Pennsylvania court does not involve construction or interpretation of the APA, we again agree that Pennsylvania rather than Illinois law is applicable to the issue.

efforts to undo its performance of an assumed liability. ***See***, ***e.g.***, ***Wright v. Misty Mountain Farm, LLC***, 125 A.3d 814, 818 (Pa.Super. 2015) ("A trial judge may always revisit her own pretrial rulings without violating the law of the case doctrine."). Indeed, Chubb acknowledged in its motion to lift the bankruptcy stay that A.O. Smith had not abandoned its attorney fee request, and thus should have fully expected the claim to resurface when it obtained relief from the bankruptcy stay.

Nor does the fact that the fee request was not renewed until after trial warrant reversal. Until the trial court made the factual finding that CST breached the APA, the nature and extent of A.O. Smith's damages caused by CST's breach was unknown. Moreover, while attempting to get the bankruptcy court's approval to pursue CST's claim, Chubb acknowledged that this would be the procedure used: "**the indemnity claim must be fully and finally resolved before a petition can be filed or a decision may be rendered on the attorneys' fees claim**." Chubb's Motion for Relief from the Automatic Stay, 10/24/17, at 4 (unnecessary capitalization omitted, emphasis added). Chubb cannot now complain that it was unaware that, if A.O. Smith prevailed in the indemnification trial, a post-trial petition for attorney fees would likely follow. As such, we hold that none of the attorney fee arguments merits relief.

For all the above reasons, we affirm the grant of A.O. Smith's post-trial motion and the judgment entered upon the trial court's verdict.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/20