J-S34036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DARLENE KIME AND ERNEST GILLEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROGER KEPHART, MANDY M. | : | No. 468 WDA 2024 |
| KEPHART, MARK PEARCE, CHAD | : | |
| WRAY, TERRY DISHONG AND LUANN | : | |
| DISHONG | : | |

Appeal from the Judgment Entered May 23, 2024
In the Court of Common Pleas of Indiana County Civil Division at No(s):
11022 CD 2020

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: December 18, 2024**

Appellants Darlene Kime and Ernest Gillen appeal from the judgment entered following a non-jury trial, in which Appellants sought to obtain a declaratory judgment that they were entitled to a prescriptive easement over the properties of Roger Kephart, Mandy M. Kephart, Mark Pearce, Chad Wray, Terry Dishong, and Luann Dishong (collectively "Appellees").  The trial court determined that Appellants were not permitted to obtain a prescriptive easement through "unenclosed woodlands" pursuant to Pennsylvania's Unenclosed Woodlands Act of 1850.  We affirm.

This case involves a dispute over the use of a dirt road that runs through three adjacent parcels in Montgomery Township, Indiana County.  Appellants

---

[*] Former Justice specially assigned to the Superior Court.

own a parcel of property that contains 49 acres of land, identified as Parcel No. 32-010-112 ("Parcel 112"). Appellant Darlene Kime and her husband, Fredrick S. Kime acquired the ownership of Parcel 112 on October 27, 1983. Thereafter, on August 23, 2010, Appellant Darlene Kime and Fredrick S. Kime chose to vest the title to the property in Appellant Darlene Kime and her son, Appellant Ernest Gillen.

Appellees Roger Kephart, Mark Pearce, and Chad Wray own a parcel of property containing 41.39 acres of land, identified as Parcel No. 32-011-100 ("Parcel 100"). Appellees Roger Kephart, Mandy M. Kephart, Terry Dishong, and Luann Dishong own a parcel of property containing 23.52 acres of land, identified as Parcel No. 32-010-147 ("Parcel 147").

On June 17, 2020, Appellants filed their initial complaint against Appellees (owners of Parcel 100), raising a count of trespass and seeking injunctive relief. In response to the resolution of preliminary objections, Appellants filed an amended complaint on July 24, 2020 against Appellees (owners of Parcel 100), raising a claim of ejectment and seeking injunctive relief. Thereafter, Appellants sought leave of court to file a second amended complaint for the purpose of adding a claim seeking a prescriptive easement over Parcels 100 and 147. Appellants also sought the joinder of indispensable parties to the litigation, namely Appellees (owners of Parcel 147).

After the trial court granted Appellants leave to amend their complaint, on January 31, 2022, Appellants filed their second amended complaint seeking a declaratory judgment that they were entitled to a prescriptive easement

over Parcels 100 and 147 based on their usage of Appellees' land from 1983 to 2019. [1,2] On February 14, 2022, Appellees (owners of Parcel 100) filed an Answer and New Matter. On May 24, 2022, the trial court permitted the joinder of Appellees (owners of Parcel 147) as indispensable parties.

The parties proceeded to a non-jury trial, which was held on January 29-30, 2024. Before trial, the trial judge conducted a site visit of the property and described the claimed prescriptive easement as follows:

> The claimed prescriptive easement joins State Route 286, and, therefore, provides ingress and egress from this public roadway. A metal gate is located near the beginning of the claimed easement, however, the right gate post has been removed and the gate appears to be no longer in use. As the easement leaves State Route 286, it enters upon Parcel 147, approximately 233 feet. The easement then reaches a "Y," and another roadway, which is not a part of the claimed easement, proceeds to the right. The claimed easement proceeds to the left, continuing in a generally northeasterly direction, a distance of approximately 133 feet. The claimed easement then takes a slight right turn, and proceeds in a generally easterly direction, a distance of approximately 133 feet; at this point, the claimed easement leaves Parcel 147, and begins to traverse Parcel 100. The claimed easement then continues in a generally easterly direction, approximately 600 feet, and enters Parcel 112.
>
> The claimed prescriptive easement is not a paved roadway, but rather, appeared to be a dirt roadway with some gravel applied in some areas. It also appeared to have grass and weeds growing up on the cartway in various sections. With regard to the width of the cartway, the width varied throughout the length of

---

[1] Appellants' second amended complaint also includes a count of ejectment. However, on May 5, 2023, Appellants filed a praecipe to discontinue the ejectment count.

[2] Appellants did not claim they acquired an easement by necessity and stipulated that their parcel is not landlocked. Notes of Testimony (N.T.), 1/29/24, at 6.

the easement, but generally, it is generally wider than the width of a motorized vehicle, and the tire-width paths with grass in the middle were visible in various sections.

The easement is much more worn in the first section (the section described above as proceeding in a generally northeasterly direction). As the easement turns slightly right and proceeds in an easterly direction approaching [Appellants'] Parcel 112, the path is muddier and contains less gravel than the first section of the roadway. The first portion of the easement travels near some dilapidated buildings situate on Parcel 147, and the roadway that breaks off the right at the "Y" provides access to Terry and LuAnn Dishong's newly constructed dwelling.

Finally, with regard to the nature of Parcel 147 and Parcel 100, it appears that both parcels are generally wooded, with some areas that have been cleared. The roadway passes through some areas that are wooded and some areas that are cleared.

Trial Court Opinion (T.C.O.), at 5-6.

At trial, the trial court heard testimony from multiple witnesses, including current and prior owners of the parcels in question. The trial court also reviewed the deeds and property records for such properties as well as recent aerial photographs.

Both parties presented witnesses to testify as to their recollection of the character of the land in question during the time period (1983-2014) in which Appellants claim they established a prescriptive easement over Appellees' parcels on the disputed road. Fredrick Kime, husband of Appellant Darlene Kime and stepfather to Appellant Ernest Gillen, who owned Parcel 112 from 1983 to 2010, was seventy-one at the time of trial. N.T., 1/29/24, 11. Kime testified that he was familiar with the subject properties as he had lived in the area his whole life and had hunted on the parcels in question, which have a

hilly terrain and "had a lot of trees and stuff." *Id*. at 11-15. Kime also claimed that when he acquired Parcel 112 in 1983, the overall landscape of the property surrounding the disputed roadway had been strip mined, leaving the land barren such that there were no trees there for five to eight years. N.T., 1/29/24, at 24-26.

On cross-examination, Kime admitted that he was not sure if the strip mining occurred before or after he bought the property in 1983 and was not sure of the exact location of the mining. *Id.* at 44-45. He recalled that the coal company planted trees after mining the area. *Id.* at 44. Kime clarified that the area of land that was "bare of vegetation for about five to eight years" due to the mining operations was only on his own parcel of land, and not Appellees' parcels. *Id.* at 49.

Appellant Gillen, who was fifty-three years old at the time of trial, recalled his childhood in which he rode his dirt bike on the properties, where he would hunt and fish from about the age of ten years old. *Id.* at 58-59. Appellant Gillen admitted he would access "the woods" to hunt from paths other than the disputed roadway. *Id.* at 83. Appellant Gillen testified that there had been strip mining on the property before his mother and stepfather bought the property in 1983. *Id*. at 67. Appellant admitted that in 1983, the disputed road was lined with trees that are still standing today. *Id.* at 85.[3]

_____

[3] Appellant Gillen did not access the disputed road from 1989 to 1992, during which he served in the military in the Persian Gulf War. N.T., 1/29/24, at 288, 306. Appellant has not resided near the parcels in question since 1994. *Id.*

- 5 -

Appellee Roger Kephart, who is a joint owner of both Parcel 147 and 100, was forty-three years old at the time of trial. While Appellant Kephart had purchased the two lots in 2018, he indicated that he was very familiar with all of the parcels, as he has consistently hunted on these properties since he was a teenager. N.T., 1/30/24, at 239. Appellee Kephart explained that even prior to his ownership of the parcels, he would participate in hunting parties in which one group of individuals would push deer to another end of the property where another group was awaiting. *Id.* at 238. Appellee Kephart recalled that Parcel 100 was predominantly wooded and indicated the disputed road was never barren but was always tree-lined on both sides. *Id.* at 240.

Appellant Kephart indicated that he purchased Parcel 100 with Appellees Wray and Pearce for recreational use, including hunting and riding all-terrain vehicles (ATVs). Appellant Kephart shared that he purchased Parcel 147 with his wife and in-laws for the purpose of constructing a dwelling for his in-laws, Terry and Luann Dishong.

Appellee Chad Wray, who is also a current owner of Parcel 100, uses the parcel for hunting and previously had joined the hunting group discussed by Appellant Kephart many years ago. *Id.* at 277-80. Appellant Wray indicated that between 1997-1999, he worked for a logging company that performed timbering on Parcel 112 and the eastern side of Parcel 100. *Id.* at 280-81. Appellant Wray indicated that the loggers chose to perform "select cut" timbering, which meant that they would choose only the larger trees to

remove from those properties, in which there were a lot of trees available for timbering. *Id.* at 284.

Appellee Mark Pearce, who is the third owner of Parcel 100, gave similar testimony indicating that he was forty-one years old at the time of trial and had utilized the relevant properties for hunting for the majority of his life. *Id.* at 293. Appellant Pearce recalled that he went turkey hunting as a young child with his father on Parcel 100. *Id.* He recalled that Parcel 100 was not vehicle accessible when was younger and required the use of an ATV to access the area, which was "overburdened with trees [and] brush." *Id.* at 294.

Appellees also presented the testimony of Kevin Blose, who was the previous owner of Parcels 147 and 100. Blose indicated that when he bought the properties in 2010, he characterized it as a wooded area with a gas well on it. *Id.* at 193. Blose indicated that the nature of the property varied, indicating that there were some areas where trees were unable to grow whereas other portions of the property were "heavily wooded." *Id.*

None of the other witnesses who testified at trial had personal knowledge of whether the disputed road passed through unenclosed woodlands during the time period in which Appellants claim to have established a prescriptive easement.

On February 20, 2024, the trial court entered an order and opinion, ruling in favor of Appellees and denying Appellants' request for a declaratory judgment. The trial court did not determine whether Appellants had established sufficient grounds for a prescriptive easement but instead found

that Appellants were prohibited from acquiring a prescriptive easement pursuant to the Unenclosed Woodlands Act of 1850 as the disputed road traveled through unenclosed woodlands.

On March 1, 2024, Appellants filed post-trial motions, which the trial court subsequently denied on March 27, 2024. Appellants filed a notice of appeal, purporting to appeal from the trial court's order denying their post-trial motions when a final judgment had not been entered on the docket.

On May 15, 2024, this Court entered an order directing Appellants to praecipe the trial court to enter judgment on the decision of the trial court. *See Prime Medica Assoc. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1154, n. 6 (Pa.Super. 2009) (clarifying that orders denying post-trial motions are interlocutory and not ordinarily appealable, but the subsequent judgment is appealable). Appellants complied with this Court's order and provided this Court with a certified copy of the trial court docket reflecting that judgment had been entered on May 23, 2024. We may proceed to review the merits of the instant appeal.

Appellants raise the following issues for our review on appeal:

1. Did the Court err in determining that [Appellees] had met their burden of proving the existence of a woodland during the period of the establishment of the prescriptive easement?

2. Did the Trial Court err in failing to consider relevant evidence of the establishment of a prescriptive easement?

3. Did the Trial Court err in failing to determine whether the elements establishing a prescriptive easement had been

proven, and if so[,] when or for what time frame were those elements established?

Appellants' Brief, at 1-2 (reordered for ease of review).

In reviewing a non-jury verdict, our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial court must be given the same weight and effect on appeal as the verdict of a jury. We consider evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa.Super. 2021) (brackets and citation omitted).

As noted above, the trial court ruled against Appellants in their attempt to obtain a declaratory judgment, finding that Appellants were not entitled to acquire a prescriptive easement along the disputed roadway for the benefit of their property due to the application of the Unenclosed Woodlands Act of 1850. We are guided by the following principles:

Generally, under the common law, one may acquire a prescriptive easement through someone else's property by proving "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of the easement] for a period of 21 years." *PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1014 (Pa. Super. 2015) (citation omitted). However, in 1850, the General Assembly carved out an exception to that general rule by

forbidding the acquisition of prescriptive easements through unenclosed woodlands. The Unenclosed Woodlands Act dictates:

> No right of way shall be hereafter acquired by user, where such way passes through un[e]nclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

*Williams v. Taylor*, 188 A.3d 447, 451 (Pa.Super. 2018). In other words, "under Pennsylvania law, a right-of-way may not be acquired by prescription through unenclosed woodland." *Martin v. Sun Pipe Line Co.*, 542 Pa. 281, 289, 666 A.2d 637, 641 (1995) (citation omitted).

Our Supreme Court has determined that the Legislature's purpose in restricting prescriptive easements through wooded areas was "to protect the owners of woodland property from unknown and undesired encroachment upon their property." *Id.* at 289, 666 A.2d at 641. This Court has also opined that the legislature also

> intended to protect more than just those wooded areas where the trees were dense enough to harvest as lumber. Instead, it sought to protect all wooded areas, including those used for recreational purposes like hunting or hiking, as well as those preserved in their natural state for conservation purposes.

*Williams*, 188 A.3d at 453.

This Court has defined "woodland" as "an area of land that trees and bushy undergrowth cover, synonymous with a forest." *Id.* at 454. A woodland area is "unenclosed" if it is not "enclosed by a fence or any other artificial barrier." *Martin*, 542 Pa. at 289, 666 A.2d at 641. Our courts have

- 10 -

clarified that "[i]t is the character of the land itself which is determinative of the application of the Act of 1850." ***Sprankle v. Burns***, 675 A.2d 1287, 1289 (Pa.Super. 1996). It is important to note that if any section of the disputed right-of-way passes through unenclosed woodlands, the Unenclosed Woodlands Act applies to the entirety of the right-of-way. ***See Kuhstoss v. Steele***, 234 A.3d 789, 794 (Pa.Super. 2020); ***Trexler v. Lutz***, 118 A.2d 210, 211 (Pa.Super. 1955).

As noted above, the trial court ruled that Appellants were not permitted to claim a proscriptive easement on the disputed road which passed through unenclosed woodlands. It is undisputed that the properties in question have never been enclosed by a fence or artificial barrier. Appellants argue that Appellees failed to prove their claim that the disputed road traveled through unenclosed *woodlands* at the time of the creation of the prescriptive easement as Appellants had presented testimony suggesting that the properties were barren around 1983 due to strip mining which denuded the land.

With respect to the strip mining of the properties in question, the trial court found "testimony presented in this regard to be unclear at best." The trial court clarified that:

> [i]t is clear that coal strip mining was conducted in the area, but the exact dates of this activity, the exact location of this activity, and the rate of grown of the reclaimed portions of the strip-mined area are so unclear, that the Court declines to find that the relevant portions of Parcel 147 and Parcel 100 were "barren" during the critical periods of easement creation.

T.C.O. at 18-19.

- 11 -

As noted above, the trial judge conducted a site visit prior to receiving the trial testimony, walked the entirety of the disputed road, and observed the nature of the properties as the disputed road passed through all three parcels. The trial court noted that there is a portion of Parcel 147 that has smaller trees and generally open areas, which the trial court found "was inconsistent with the general nature of the area." T.C.O. at 17. The trial court noted that the open area of Parcel 147 "appear[s] to be the result of prior coal strip mining activity, and subsequent reclamation." *Id*.

However, the trial court observed that as the disputed roadway enters Parcel 100, it passes through the "heaviest forest … containing trees of considerable size, large enough to create a canopy [where] dense underbrush are present on both sides of the roadway throughout this section." *Id*.

The trial court also noted that both parties offered testimony regarding the use of the parcels that was consistent with the finding that the parcels contained unenclosed woodlands. At least five of the parties (including both Appellants and Appellees) indicated that the properties, primarily Parcel 100, were consistently used over the past several decades as a choice location for hunting in groups. The trial court also noted that the properties were chosen by logging companies for the removal of select timber, in which only the largest trees were taken. The trial court also specifically indicated that it found Appellee Roger Kephart to be credible in his testimony that Parcel 100 was never "barren" as described by Kime and Appellant Gillen, but predominantly wooded. *Id*.

- 12 -

As our review of the certified record supports the trial court's determination that the disputed right-of-way passes through unenclosed woodlands, the Unenclosed Woodlands Act applies to the entirety of the right-of-way. ***See Kuhstoss***, ***supra***; ***Trexler***, ***supra***. Thus, the trial court appropriately determined that Appellants could not acquire a prescriptive easement over the disputed roadway.

Based on the foregoing conclusion, we need not review Appellants' claims that the trial court erred in failing to determine whether Appellants had established a prescriptive easement, as they were not permitted to do so through unenclosed woodlands.

Judgment affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 12/18/2024