J-A05016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF WENDELL L. LEHMAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  NICHOLAS L. BOYER, DEANNA M. BOYER, ANNETTE M. BOYER, QUINN T. STARNER, AND ROSS E. STARNER | : | |
| | : | |
| | : | |
| | : | No. 601 MDA 2021 |

Appeal from the Order Entered April 16, 2021,
in the Court of Common Pleas of Adams County,
Orphans' Court at No(s):  OC-73-2017.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.                    **FILED APRIL 01, 2022**

Some of the Descendants of the late Wendell L. Lehman, (namely, decedent's daughter, Annette M. Boyer, and her children and grandchildren) objected to the administration of Wendell's Estate in the Orphans' Court of Adams County.  Following a non-jury trial, Descendants appeal from an order ruling that (1) Annette's brother, Sheldon Lehman, did not unduly influence Wendell regarding Wendell's designation of beneficiaries on four transfer-on-death accounts and that (2) Sheldon did not violate a fiduciary duty to Wendell.[1]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court also held that Wendy S. Starner and Christopher L. Boyer lack standing.  Descendants do not appeal that determination.  That decision is now final; thus, we have removed Wendy and Christopher's names from the caption.

Descendants only challenge the third ruling. They allege Sheldon was acting under a power of attorney when Wendell signed the beneficiary-designation forms, and, therefore, Sheldon owed Wendell a fiduciary duty. Because Wendell signed the beneficiary-designation forms on his own volition, we affirm.

Wendell was originally married to Jeanne, and they had four children – Annette, Wanda, Lindy, and Sheldon. Wendell was a successful businessman and savvy investor. He kept a close eye on his investments and thoroughly questioned those who managed his finances. Wendell was never easily bullied or manipulated. He possessed a strong will and adhered to traditional gender roles. Also, he often threatened his children with disinheritance to manipulate them into doing what he desired.

This strained Annette's relationship with her father, because she would often challenge his conduct and familial control. After a 1988 dispute, Annette ceased all communication with her parents, three siblings, and daughter for eight years. This and other disagreements between Wendell and Annette caused Wendell to remove her from and return her to his will on several occasions.

Around 2003 or 2004 Wendell opened a Genworth Annuity account as an irrevocable retirement account ("IRA"), and he named all four children as his beneficiaries. He later changed the beneficiary of this transfer-on-death account to his Estate.

Then, on September 17, 2009, Wendell's first wife died, and he married Beatrice in December of 2010. The next winter, Wendell appointed Sheldon as his power of attorney. A month later, he opened a second transfer-on-death account with Wanda, Lindy, and Sheldon designated as beneficiaries.

Approximately two years passed, and, on November 10, 2014, Wendell met with Harry "Bud" Rubin, Esq. to modify his will. Attorney Rubin's partner, Alex Snyder, Esq.; Wanda's husband; Lindy's husband; and Sheldon were also at that meeting. The orphans' court found that:

> [Wendell] was very clear during the November 10, 2014 meeting about what he wanted to do . . . [He] and Attorney Rubin did the majority of the talking . . .
>
> It was not Attorney Snyder's impression that the . . . meeting was being steered by anyone other than [Wendell]. Attorney Snyder [was] always concerned about the testamentary capacity of his elderly clients when he [was] involved in creating testamentary documents[; hence,] it [was] his standard practice to assess testamentary capacity and whether the testator is being influenced by others. [He] had no concerns about Wendell's testamentary capacity during the November 10, 2014 meeting.
>
> [The orphans' court deemed that] the testimony of Attorney Snyder [was] credible. Every single person who testified at trial, that was present during the November 10, 2014 meeting . . . testified that it was [Wendell] who instructed Attorney Rubin as to how to draft his will.
>
> Attorney Rubin drafted the 2014 will and emailed it to Sheldon on November 14, 2014, copied Attorney Snyder, and stated, "Sheldon, I think this does what Wendell wants it to do in the easiest and simplest way." N.T., 9/10/20, at 405. The 2014 will was signed by [Wendell] on December 4, 2014.
>
> When [Wendell] discovered that the 2014 will could have potentially resulted in [him] bequeathing more than

> $200,000 to Beatrice, he made another appointment with [Attorney] Rubin to change the will. The provisions excluding Annette and including Annette's Grandchildren in the 2015 will were the same as in the 2014 will.

Orphans' Court Opinion, 4/16/21, at 20-22.

Eight days later, on November 18, 2014, Wendell opened his third and fourth transfer-on-death accounts. For both, he named Wanda, Lindy, and Sheldon as beneficiaries. On that same day, he changed the beneficiaries on his Genworth Annuity IRA from his Estate to Wanda, Lindy, and Sheldon.

Wendell "signed the beneficiary-designation forms and made the beneficiaries of these . . . accounts Wanda, Lindy and Sheldon . . . ." *Id.* at 23-24. Indeed, "[t]here was no evidence or testimony presented that any of [Wendell's] signatures or initials on the beneficiary-designation forms were forged or executed without [his] knowledge or authorization." *Id.* at 24. In other words, Wendell knowingly and voluntarily executed the beneficiary-designation forms for the transfer-on-death accounts. Hence, as a factual matter, "Sheldon was not acting as the agent for [Wendell] when Sheldon prepared the beneficiary-designation forms and [Wendell] signed" them. *Id.*

Wendell died on August 2, 2016. A year later, Descendants "filed a Petition for Citation to Show Cause Why an Inventory and Accounting Should Not be Filed by [Sheldon] While Acting as an Agent for [Wendell], While Acting as Executor of the Estate of Wendell L. Lehman and Why [Sheldon] Should Not be Removed as Executor." *Id.* at 26. Descendants alleged that Sheldon, as Wendell's power of attorney, unilaterally changed beneficiary designations

- 4 -

on Wendell's four transfer-on-death accounts to benefit himself and others and to exclude Annette and her heirs.

On November 21, 2017, the orphans' court directed Sheldon to file an Inventory and Accounting for the period that he acted as Wendell's agent and an Inventory and Accounting of his activities as Executor of the Estate. Sheldon filed a First and Final Accounting as Wendell's agent pursuant to the POA (the "POA Accounting") and filed a First and Partial Accounting for the Estate.

Descendants filed Objections to the POA Accounting and Objections to the First and Partial Accounting for the Estate. The parties agreed to bifurcate the issues concerning the transfer-on-death accounts. The orphans' court held a non-jury trial regarding those accounts in September of 2020, and the court issued its decision on April 16, 2021. This timely appeal followed.[2]

Descendants raise seven claims of error. They are as follows:

1.    Whether the [orphans' court] erred and abused its discretion in finding that [Sheldon] did not violate his fiduciary duty of loyalty and good faith to [Wendell] by failing to exercise reasonable caution or prudence in the exercise of his duties.

2.    Whether the [orphans' court] erred and abused its discretion in failing to find that once [Sheldon] was named as agent for [Wendell], pursuant to a certain power of attorney dated December 30, 2010, the duty

_____

[2] Although the April 16th Order is not a final order disposing of all claims and all parties, our appellate jurisdiction is vested. Under Pennsylvania Rule of Appellate Procedure 432(a), we have jurisdiction over the order, because it determines that Descendants have no interest in personal property – *i.e.*, the four transfer-on-death accounts.

of good faith and honesty in fact applies to all actions by [Sheldon] (including material omissions) during the period while the power of attorney is in effect.

3. Whether the [orphans' court] erred and abused its discretion in finding that [Sheldon] was not acting as an agent for [Wendell] when [Sheldon] appeared with [Wendell] at the November 10, 2014 meeting at Barley Snyder nor was [Sheldon] acting as agent for [Wendell] when [Sheldon] prepared the beneficiary-designation forms signed on January 26, 2012 and November 18, 2014.

4. Whether the [orphans' court] erred and abused its discretion in failing to apply 20 Pa.C.S.A. §§ 5601 – 5613 (the POA Statute), and [in failing to] find that all actions by [Sheldon were] subject to the language of "good faith" defined as "honesty in fact," including those where he completed the beneficiary-designation forms signed on January 26, 2012 and November 18, 2014, where [Sheldon] was both the agent, a beneficiary of a retirement plan, and the financial advisor of [Wendell].

5. Whether the [orphans' court] erred and abused its discretion when it disregarded the testimony of Christopher M. Harvey, Esquire, an expert in the field of trusts and estates, who testified once an agent under a power of attorney puts on the hat as an agent that fiduciary obligation to act in good faith continues.

6. Whether the [orphans' court] erred and abused its discretion in precluding [Descendants] from admitting or using any evidence of [Sheldon's] history of loans between himself and Virginia McCleaf, with whom he was in a fiduciary relationship with, under a power of attorney dated March 13, 2014, and for which he was found to have "engaged in dishonest or unethical practices in the securities business," for which the Department of Banking and Securities fined him [$100,000].

7. Whether the [orphans' court] erred and abused its discretion in precluding [Descendants] from admitting

- 6 -

> > or using any evidence of [Sheldon's] history of loans between himself and [Wendell].

Descendants' Brief at 3-5 (excess capitalization omitted). Descendants combine their first through fifth issues and their sixth and seventh issues in the argument portion of their brief. Thus, we dispose of the issues in the same manner below.

## 1. Issues One through Five.

For their first five issues, Descendants contend that the orphans' court misapplied the law regarding powers of attorney and the fiduciary duties that a power of attorney must fulfill. While this section of their argument is long and drawn out,[3] it rests upon Descendants' belief that Sheldon owed Wendell

_____

[3] We note that Descendants' brief violates the Pennsylvania Rules of Appellate Procedure. Those Rules provide, "The argument **shall be divided into as many parts as there are questions to be argued**; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a) (emphasis added). This is not a picayune matter of style. Rule 2119(a) guides writers to craft concise, cogent arguments for each issue raised. This aids appellate review by compartmentalizing the claims of error and the legal theories supporting them. This, in turn, heightens our comprehension of the arguments and increases a brief's persuasive power.

Disregarding that Rule, Descendants jumbled their first five issues into a 72-page stream of ideas. **See** Descendant Brief at 20-92. They then crammed their final two claims of error in the last page-and-a-half of their brief. **See id.** at 93-94. Moreover, none of their nine sub-headings for the first section directly matches the five issues that Descendants raised. This throw-everything-at-the-wall approach to appellate advocacy, at best, lessens the odds of convincing the court that reversible error occurred. At worst, it may lead to the quashing of the appeal. "Although it is within this Court's power to quash an appeal for clear violations of the Rules of Appellate

*(Footnote Continued Next Page)*

a fiduciary duty when Wendell decided and designated his beneficiaries for the

four transfer-on-death accounts.

The orphans' court disagreed. It found as a matter of fact that Sheldon

did not sign the beneficiary-designation forms. Thus, that court concluded

that Sheldon was not acting under his power of attorney. It opined as follows:

> The evidence and testimony at trial clearly establishes that Sheldon was not acting as the agent for [Wendell] when Sheldon appeared with [Wendell] at the November 10, 2014 meeting, nor was Sheldon acting as agent for [Wendell] when Sheldon prepared the beneficiary-designation forms at the direction of [Wendell,] which [Wendell] signed on January 26, 2012 and November 18, 2014. ***See In Re: Estate of Anna S. Wierzbicki***, 174 A.3d 1061 (Pa. Super. 2017) wherein Superior Court ruled:
>
> > [F]irst, it is undisputed that the decedent herself executed the document. The [appellants] do not dispute that the signature on page 3 of the document is that of the decedent. The fact that the executrix assisted the decedent by handwriting the names and other information of the decedent's chosen beneficiaries is of no moment.
>
> ***Id.*** at 1065. Furthermore, [Wendell] had testamentary capacity on November 10, 2014 and was not suffering from weakened intellect during this time period.
>
> The best evidence concerning [Wendell's] "known intent" on November 18, 2014 is [Wendell's] actions on January 26, 2012 when [Wendell] opened TCA Account 328 and named Wanda, Lindy and Sheldon as the beneficiaries,

---

Procedure, because appellants' brief is not so defective as to preclude effective appellate review, we will not quash their appeal." ***Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.***, 916 A.2d 686, 689 n.6 (Pa. Super. 2007) (citation omitted).

and specifically excluded Annette and her bloodline concerning this [transfer-on-death] Account.

Orphans' Court Opinion, 4/16/2021, at 41-43.

The factual findings that Wendell signed the beneficiary-designation forms and that Sheldon only assisted Wendell at Wendell's direction finds support in the record, because Sheldon testified to those facts. We afford the orphans' court's factual findings "the same weight as we would a jury verdict." **In re Estate of Piet**, 949 A.2d 886, 890 (2008), *vacated on other grounds*, 997 A.2d 338 (Pa. 2010).

As the "finder of fact, the judge is free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations." **In re Rosenbloom**, 621 WDA 2019, 2020 WL 753332, at *2 (Pa. Super. 2020) (unpublished decision) (quoting **Williams v. Taylor**, 188 A.3d 447, 450 (Pa. Super. 2018) (some punctuation omitted). "A judge of the orphans' court, who heard and saw the witnesses testify and who had the sole power to determine their credibility, is in a far better position than this Court to decide the truth." **Id.** Here, the orphans' court heard and saw Sheldon testify as to his interactions with Wendell during the execution of the beneficiary-designation forms, and that court found Sheldon's version of the events to be credible. That credibility finding binds this Court.

Thus, we agree with the orphans' court. Sheldon was not acting under his power of attorney when Wendell signed the forms, because Sheldon did not sign the forms. **See Wierzbicki**, **supra**.

Descendants first five issues are meritless.

**2.   Issues Six and Seven.**

Next, Descendants claim the orphans' court committed two evidentiary errors. ***See*** Descendants' Brief at 92-94.    They cite no Rule of Evidence or any case law to support either assertion of error.  This is a clear violation of Pa.R.A.P. 2119(a), and it "waives the issue[s] for purposes of review." ***In re Estate of Whitley***, 50 A.3d 203, 210 (Pa. Super. 2012).

We dismiss Descendants' evidentiary claims as waived.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/01/2022