J-A17029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CRJM, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NTN REALTY, LLC | : | |
| | : | |
| Appellant | : | No. 2632 EDA 2023 |

Appeal from the Judgment Entered September 29, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2019-27657

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED JANUARY 14, 2025**

Appellant NTN Realty, LLC (Seller) appeals from the judgment entered in favor of Appellee CRJM, LLC (Buyer) following a bench trial in which the trial court concluded that Buyer timely terminated a sales agreement with Seller and that Buyer was entitled to the return of its deposit. Seller argues that Buyer did not terminate the agreement in a timely manner, and therefore, Seller should retain the deposit. After careful review, we affirm.

The trial court set forth the relevant factual history of this matter as follows:

> This is a contract action arising from the sale of real estate located [in] Lansdale, PA 19446 ("Property"). The parties signed an Agreement of Sale ("Agreement") in which [Buyer] agreed to buy the Property from [Seller] in exchange for $590,000.00. Christopher Fiore, Esquire, counsel for Buyer ("Buyer's counsel"), and William Dudeck, Esquire, former counsel for [Seller] ("Seller's counsel"), drafted the Agreement. Communications regarding the

sale were between Jamie Perna, one of Buyer's two (2) owners, and Bryan Perchick ("Seller's realtor").

Paragraph 2.1 of the Agreement states, in part: "<u>Deposit</u>. **Simultaneously** with the execution hereof, Buyer shall remit to Seller's attorney . . . as escrow agent . . . an Initial Deposit of **Fifty Nine Thousand Dollars ($50,000.00)** [sic] . . . ." (emphasis added).

The [c]ourt finds that the discrepancy regarding the deposit amount in Paragraph 2.1 of the Agreement is a mutual mistake of fact.[1] The parties intended the deposit amount to be 10% of the purchase price (*i.e.*, $59,000.00).

Paragraph 6.2 of the Agreement is a due diligence clause that provides, in part: "Buyer shall have thirty (30) days after the execution by both parties of this Agreement of Sale . . . to conduct such . . . inspections . . . of the Property as Buyer shall deem necessary or appropriate to evaluate the Property." Pursuant to this clause, on October 3, 2019, an inspection of the Property occurred. Buyer decided to terminate the Agreement upon discovering an undisclosed underground tank. By letter dated October 17, 2019, Buyer's counsel notified Seller's counsel[] and Seller[] that: "Pursuant to Section 6.2 of the Agreement of Sale, my client hereby exercises its right to terminate the agreement of sale. The agreement of sale is hereby null and void[.] Kindly return the deposit in the amount of $59,000.00 to my client's attention as soon as possible."

By letter dated November 7, 2019, Seller's counsel informed Buyer's counsel that Seller is not in agreement to returning Buyer's deposit. This letter stated, in part:

> According to our records, [S]eller executed the agreement of sale on September 11, 2019, which I then emailed to you that same day. By letter dated September 16, 2019, you

---

[1] "Mutual mistake will afford a basis for reforming a contract." ***Zurich American Ins. Co. v. O'Hanlon***, 968 A.2d 765, 770 (Pa. Super. 2009) (citation omitted). Neither party disputes the trial court's conclusion that the agreement required a deposit of $59,000, and that the agreement spelled out the correct amount but followed it with the errant numerical representation: ". . . Fifty[-]Nine Thousand Dollars ($50,000.00)[,]" and that this was a mutual mistake and scrivener's error. Trial Ct. Op., 1/3/24, at 2 (quoting Agreement at Para. 2.1); ***see also*** Seller's Brief at 30; Buyer's Brief at 9.

> mailed the fully executed agreement (dated 09/12/2019 by either you or [B]uyer) to me, which I received on September 23, 2019.
>
> In light of the foregoing, [S]eller contends that [B]uyer did not timely terminate the agreement of sale on or before the Due Diligence Date as provided in section 6.2 (viz. October 16, 2019 at the latest) and it is therefore entitled to retain the deposit as a result of [B]uyer's default (as indicated by your letter dated 10/17/2019) as provided in section 13.1 of the agreement of sale. I must therefore decline [B]uyer's request for the return of the deposit at this time.

In addition to acting as Seller's counsel, Mr. Dudeck also acted as the escrow agent, which is why he "retreated to the shadows" when he became aware there was a dispute regarding the escrow:

> Once there was the breakdown, I really — I never even talked to [Seller] again about this until after the breakdown. I think that I sent a letter to [Buyer's counsel] in October saying that this is my client's position.
>
> And after that, I told [Seller], you know, I can't represent you. You'll have to find another attorney because now I'm the escrow agent. I felt conflicted and I didn't even have a conversation with [Seller] again after that, or anything about this.

Chronological Narrative of Facts

In early September 2019, Seller's counsel received the proposed Agreement from Buyer's counsel. On 9/6/19, Seller's counsel made changes to the proposed Agreement and sent them to Buyer's counsel. On 9/10/19, Buyer's counsel notified Seller's counsel that all of Seller's changes were acceptable. On 9/11/19, Seller signed the Agreement, and Seller's counsel emailed the signature page to Buyer's counsel for Buyer to sign.

On 9/12/19, Buyer signed the Agreement as well as a deposit check in the amount of $50,000.00.[FN13] On either 9/12/19 or 9/13/19, Buyer delivered the Agreement (signed by Buyer and Seller) to Buyer's counsel.

[FN13] N.T., Bench Trial, 6/21/23, at 11-12, 29-30, & Ex. P-6. Ms. Perna (Buyer) mistakenly enclosed a check for $50,000.00 rather than the agreed-upon $59,000.00

- 3 -

because "That's what I saw at first [in the Agreement], and that's what I wrote." N.T., Bench Trial, 6/21/23, at 31.

On either 9/15/19 or 9/16/19, Ms. Perna (Buyer) and Seller's realtor had a brief phone call during which Seller's realtor yelled at Ms. Perna, angrily demanding to know where the signed Agreement was. Ms. Perna advised [Seller's realtor] that it was in the mail, and she abruptly ended the conversation because the Seller's realtor was rude and yelling at her. As a result of Seller's realtor's unprofessional conduct during this phone conversation, the communications thereafter between Ms. Perna and Seller's realtor were by text message or email. Moreover, based on [Seller's realtor] angrily demanding receipt of the signed Agreement and his tone during this conversation, Ms. Perna believed that she could not go forward with an inspection until Seller had physically received the fully signed Agreement.

On 9/16/19, Buyer's counsel sent the Agreement (signed by Buyer and Seller) to Seller's counsel by regular mail. On 9/16/19 at 9:31 a.m., Seller text[ed] its realtor: ". . . spoke to [my attorney] this morning still have not got signature page countersigned [by Buyer] and of course no escrow check either[.]" On 9/16/19 at 11:30 a.m., Buyer's counsel email[ed] Seller's counsel to advise that: (1) Buyer had signed the Agreement; and (2) Buyer's counsel had placed the fully signed Agreement in the mail to be sent to Seller's counsel.

On 9/17/19 at 1:26 p.m., Ms. Perna (Buyer) text[ed] Seller's realtor and state[d]: "Everything was sent yesterday," meaning the signed Agreement and deposit check. On 9/17/19 at 1:26 p.m., Seller's realtor text[ed] Ms. Perna (Buyer): "Ok[.] I'll reach out to [Seller] and call you back today thank you." At some point later on 9/17/19, Seller's realtor left a voicemail for Ms. Perna (Buyer) stating that Seller had not received the fully signed Agreement.

On 9/20/19, Seller text[ed] its realtor: ". . . just received today's mail and of course I don't have a package from the young lady [Ms. Perna][.] We both understand how ridiculous this is[.] Just wanted to make sure you were in the loop and to throw out the idea of I think she's (Buyer) wasting our time[.]

On 9/23/19 at 11:39 a.m., Ms. Perna (Buyer) text[ed] Seller's realtor: "Please let me know your seller receive the agreement of sale. Then I will [proceed] with the inspection and [S]eller do the phase 1." On 9/23/19 at 12:41 p.m., Seller's realtor text[ed] Ms.

Perna (Buyer): "Good afternoon[.] I just left a voicemail with [Seller] . . . to Confirm he has his executed copies. I spoke to him this morning and as of 10[:]30 [a.m.] he did not." On 9/23/19 at 12:41 p.m., Ms. Perna (Buyer) text[ed] Seller's realtor: "It was regular mail so give it 7 business days unfortun[ately]."

On 9/23/19 at 12:53 p.m., Seller's realtor text[ed] Seller: "The buyer has just reach me that it could take up to seven business days for the agreement of sale which is signed and accompanied by a copy of her deposit check to reach your office . . . it went regular mail[.]" On 9/23/19 at 12:53 p.m., Seller text[ed] its realtor: "I appreciate all of your help up to this point[.] I'm gonna let the attorneys take care of it from here forward[.] Will circle back to you as soon as I have something to report[.] Have a great day and again thank you very much for all the help[.]"

On 9/23/19, at an unknown time, Seller's counsel receive[d] in the mail the fully signed Agreement and $50,000.00 deposit that Buyer's counsel had mailed on 9/16/23. On 9/23/19 or shortly thereafter, having received the $50,000.00 check in the mail, Seller's counsel and Buyer's counsel communicated regarding the fact that an additional $9,000 was owed for the deposit. On 9/25/19, Buyer's counsel mail[ed] a check to Seller's counsel in the amount of $9,000 for the remainder of the $59,000 deposit.

On 9/26/19 at 2:53 p.m., Liberty Inspection Group email[ed] Seller's realtor to advise that they had been selected by Buyer to inspect the Property on 10/3/19. On 9/26/19 at 3:20 p.m., Ms. Perna (Buyer) text[ed] Seller's realtor: "I will need to get in Oct. 3rd for an inspection at 1pm." On 9/26/19 at 4:49 p.m., Seller's realtor forward[ed] Liberty Inspection Group's email (of 9/26/19 at 2:53 p.m.) to Seller and asks Seller: "are we under contract?"

On 9/27/19 at 9:43 a.m., Seller confirm[ed] with his realtor that his counsel has received the signed Agreement. On 9/27/19 at 10:09 a.m., Seller's realtor email[ed] Seller: "Finally, that's great news. We will be out there [at the Property] next week to get the[] [inspection company] inside. Please forward an executed copy of the agreement of sale[.] On 9/27/19 at 10:10 a.m. (just 1 minute after Seller's realtor's email to Seller), Seller's realtor text[ed] Ms. Perna (Buyer): "Good morning, we are confirmed [for the inspection] October 3[.]"

On approximately 9/27/19, or shortly thereafter, Seller's counsel receive[d] the check in the amount of $9,000 for the remainder

of the deposit. As of this time, Seller had received the total deposit amount of $59,000.

On 10/3/19, Liberty Inspection Group inspect[ed] the Property. On 10/17/19, Buyer's counsel mail[ed] a letter, by FedEx and first-class mail, to Seller's counsel and Seller, advising that "[p]ursuant to Section 6.2 of the Agreement of Sale, [Buyer] hereby exercises its right to terminate the agreement of sale . . . [.] Kindly return the deposit in the amount of $59,000.00 . . . ." In addition to sending this letter by FedEx and first-class mail, Buyer's counsel also emailed this letter to Seller's counsel on 10/17/19.

On 11/7/19, Seller's counsel mail[ed], via FedEx, a letter to Buyer's counsel stating that Seller is declining Buyer's request for the return of the deposit as Seller's position is that Buyer did not terminate the Agreement before the expiration of the Due Diligence Date.[FN41]

> [FN41] N.T. Bench Trial, 6/21/23, at Ex. P-15. Paragraph 13.1 of the Agreement provides that, in the event Buyer defaults, "Seller shall be entitled to receive and retain the Deposit and any interest as liquidated damages . . . ."
>
> Paragraph 17.0 of the Agreement, which is the notice provision, provides that "[a]ny notice required or permitted . . . shall be in writing." This provision states that notice shall be by: (1) "a nationally recognized overnight courier service providing a receipt (such as Federal Express)[;]" (2) hand; or (3) facsimile. In the case of overnight courier service, notice shall be deemed to have been given "on the next Business Day." Accordingly, the termination notice provided by Buyer's counsel by Federal Express and dated October 17, 2019 is deemed to have been given on Friday, October 18, 2019.

Trial Ct. Op., 1/3/24, at 1-7 (some footnotes omitted and formatting altered).

A bench trial was held on June 21, 2023. Ultimately, the trial court concluded:

The [c]ourt finds Ms. Perna (Buyer) credible in every material aspect of her testimony. Moreover, during their time on the stand testifying, the [c]ourt observed Ms. Perna's demeanor was quiet

and reserved, while in contrast, Seller's realtor's demeanor came across, for lack of a better description, as "rough around the edges." In short, their demeanors were consistent with Ms. Perna's descriptions as to their interactions.

*Id.* at 7. The trial court found in favor of Buyer and against Seller. Specifically, the trial court concluded that Buyer was entitled to its $59,000 deposit, plus costs and interest. *See id.* at 8. Seller filed a post-trial motion, which the trial court denied, and on September 29, 2023, Buyer filed a praecipe for the entry of judgment. Seller filed a timely appeal.

On appeal, Seller raises the following issues:

1. Whether [Buyer's] termination of the Agreement of Sale was untimely because the parties executed the Agreement on September 12, 2019?

2. Whether [Buyer's] due diligence period was tolled by estoppel?

Seller's Brief at 4.

Seller argues that the Agreement was executed on September 12, 2019, or at the latest, September 16, 2019. *See* Seller's Brief at 27-32. Therefore, Seller contends that the thirty-day due diligence period in which Buyer could terminate the Agreement and keep its deposit began to run, at the latest, on September 16, 2019. *See id.* at 27-32. Seller asserts that Buyer's termination of the Agreement on October 18, 2019, fell outside the due diligence period. *See id.* at 21-32.

Buyer responds that the trial court did not err. Buyer's Brief at 16. Buyer contends that the $59,000 deposit was a condition precedent that had to be satisfied before the agreement was executed. *See id.* at 19. Buyer

argues that because the full amount of the deposit was not paid until September 27, 2019, the due diligence period in which Buyer could terminate did not begin to run until September 27, 2019. Accordingly, the period did not expire until October 28, 2019, and because Buyer terminated the agreement on October 18, 2019, the termination was within the due diligence period. *See id.* at 16-23.

> Our review of a verdict in a non-jury trial is limited to determining
>
> whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error in any application of the law. We consider the evidence in a light most favorable to the verdict winner and will reverse only if the trial court's findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Hornberger v. Dave Gutelius Excavating, Inc.*, 176 A.3d 939, 943-44 (Pa. Super. 2017) (citations omitted and formatting altered). "[T]he trial judge, as finder of fact, is free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations." *Williams v. Taylor*, 188 A.3d 447, 450 (Pa. Super. 2018) (citation omitted).

"[I]n determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed." *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020) (citations omitted). A condition precedent is "a condition which must occur before a duty to perform under a contract arises." *Acme*

***Markets, Inc. v. Federal Armored Exp., Inc.***, 648 A.2d 1218, 1220 (Pa. Super. 1994) (citation omitted).

> While the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention. In addition, we note that the purpose of any condition set forth in a contract must be determined in accordance with the general rules of contractual interpretation.

***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 874 (Pa. Super. 2001) (citation omitted).

Here, the trial court agreed with Buyer and concluded that Seller's receipt of the full deposit of $59,000 was a condition precedent to the agreement's execution. ***See*** Trial Ct. Op., 1/3/24, at 11. Specifically, the trial court explained:

> To be complete, an acceptance must be communicated to the offeror, either directly or by some definitive act such as placing the contract in the mail. ***Groskin v. Bookmyer***, 166 A. 233, 234 (Pa. 1933) (citation omitted).
>
> Here, Buyer's counsel drafted the proposed Agreement and sent it to Seller's counsel to review. Seller's counsel made suggested changes to the proposed Agreement (*i.e.*, counter-offer), sent these proposed changes to Buyer's counsel, and, on September 10, 2019, Buyer's counsel notified Seller's counsel that Buyer agreed to these changes *in toto*. On September 11, 2019, Seller signed the Agreement and, later on that same date, Seller's counsel emailed this signature page to Buyer's counsel to be signed by Buyer.
>
> On September 12, 2019, Buyer signed the Agreement. On September 12th or 13th, 2019, Buyer dropped off the fully signed Agreement to its counsel. On September 16, 2019, Buyer's counsel mailed the Agreement and deposit check in the amount of $50,000.00 to Seller's counsel. That constituted acceptance of

the Seller's offer as the definitive act of placing the fully signed Agreement in the mail was designed to notify Seller of Buyer's acceptance. **However, that did not constitute "execution" of the Agreement.**

The parties did not define the meaning of "execution" in the Agreement. Black's Law Dictionary defines it as "the act of carrying out or putting into effect." (11th ed. 2019). In this case, pursuant to ¶¶ 2.1 and 6.2 of the Agreement, **it was not "put into effect" until:** (1) both parties had signed and delivered it to Seller's counsel; **and (2) Buyer had remitted the initial deposit amount of $59,000.00 to Seller's counsel.** As stated in the Factual History *supra*, it is clear the discrepancy in the deposit amount set forth in ¶ 2.1 of the Agreement was a mutual mistake of fact. It is undisputed that the initial deposit amount was to be $59,000.00. Thus, the requirements that: (1) each party sign the Agreement; (2) the fully signed Agreement be delivered to Seller; **and (3) Buyer pay a deposit in the amount of $59,000.00 are conditions precedent** that had to be satisfied before the 30-day due diligence period set forth in ¶ 6.2 was triggered.

On September 23, 2019, Seller's counsel received the fully signed Agreement and the $50,000.00 check in the mail. Shortly after receiving these documents and noticing that the deposit was short by $9,000.00, he and Buyer's counsel communicated regarding the fact that an additional deposit of $9,000.00 was required to be sent by Buyer. On September 25, 2019, Buyer's counsel mailed a check for this remaining amount to Seller's counsel. In an email from Seller's counsel to Seller dated September 27, 2019 at 9:01 a.m., Seller's counsel notes that he was "still waiting on the $9,000 balance due and owing on the initial deposit." Therefore, the earliest Seller could have received the full deposit amount of $59,000.00, and hence the date the Agreement was fully executed, was September 27, 2019. At that time, **the 30-day due diligence period began**, and it **ended on Monday, October 28, 2019**.[FN45]

[FN45] Pursuant to ¶ 19.3 of the Agreement: (1) September 27th was excluded from the computation of time as it was the date from which an event (*i.e.*, the due diligence period) began; and (2) October 27th is excluded as it was a Sunday.

Seller's understanding that the Agreement was not "executed" until Seller had physically received both the Agreement (signed by

- 10 -

> Buyer and Seller) and the initial deposit of $59,000.00 is demonstrated by the following: (1) the actions of Seller's realtor in demanding of Buyer delivery of the signed agreement and **full escrow sum [of $59,000]** in response to Buyer's seeking to discuss arranging an inspection; and (2) the texts and emails between Seller and its realtor . . . in which they made clear their intent not to allow an inspection until they had received the signed Agreement and escrow.
>
> By letter dated October 17, 2019, and sent by Federal Express, Buyer's counsel notified Seller's counsel that, pursuant to ¶ 6.2 of the Agreement, Buyer: (1) was terminating the Agreement; and (2) was due a return of its $59,000.00 deposit. Pursuant to ¶ 17.0 of the Agreement, since the termination notice was sent by Federal Express, it was deemed to have been delivered on the "next Business day," which was October 18, 2019, well before the due diligence period expired on October 28, 2019.
>
> Based on the above, Buyer terminated the Agreement timely and is due a return of its $59,000.00 deposit.

Trial Ct. Op., 1/3/24, at 10-12 (some footnotes omitted, formatting altered, and some emphases added).

Following our review of the record, we conclude that the trial court's findings are supported by the record, and we discern no error of law in the trial court's conclusions. *See Hornberger*, 176 A.3d at 943-44. As noted previously, when determining whether a contract has been executed and is therefore enforceable, the parties must manifest an intent to be bound by the terms of the agreement. *See Kelly*, 229 A.3d at 653.

Here, at trial, Buyer presented testimony from Ms. Perna, along with texts and emails between Seller and its realtor, which demonstrated that the agreement would not go into effect until Seller had physically received the signed Agreement **and** the initial deposit of $59,000. *See* Trial Ct. Op.,

1/3/24, at 10-11. Therefore, because Seller did not manifest an intent to be bound by the terms of the agreement until the deposit was received, the record supports the trial court's conclusion that full payment of the $59,000 deposit was a condition precedent to the execution date of the agreement. *See id.* at 11-12; N.T., 6/21/23, at 10-19, 70-81, 150-55; Exhibits P-7, P-9, P-10, P-12, P-14 (text messages and emails). Further, the trial court sitting as the finder of fact, specifically stated that it found Ms. Perna credible. *See* Trial Ct. Op. 1/3/24, at 7. This Court will not disturb the trial court's credibility determinations. *See Williams*, 188 A.3d at 450.

In sum, because the full $59,000 deposit was not made until September 27, 2019, we agree with the trial court's conclusion that September 27, 2019 was the date that the agreement was "executed." Accordingly, the thirty-day due diligence period began to run on September 27, 2019, and ended on October 28, 2019.[2] Because Buyer terminated the agreement on October 18, 2019, termination occurred within the thirty-day due diligence period, and there was no error by the trial court in concluding that Buyer was permitted to terminate the agreement and retain its $59,000 deposit. For these reasons, we affirm.[3]

Judgment affirmed. Jurisdiction relinquished.

_____

[2] October 27, 2019, was excluded because it fell on a Sunday. *See* Agreement at ¶ 19.3.

[3] Because we conclude that the agreement was no executed until September 27, 2019, and that Buyer terminated the agreement within the due diligence period, we do not reach the alternative estoppel argument.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>1/14/2025</u>